*June 5th.*					*In the matter of* MARY LIVINGSTON, *a Lunatic.*

The custody of a *lunatic's* person and estate, real and personal, may be com-
mitted to the next of kin, or heir at law.

PETITION of *Alexander Crofts,* and *Mary,* his wife,
stating, that on a commission, in nature of a writ *de luna-
tico inquirendo, Margaret Livingston* was found a lu-
natic; that she is the widow of *Robert T. Livingston,*
deceased, and entitled to real and personal estate; that the
petitioner, *Mary,* is the only child of the lunatic; that the
lunatic is in a state of deplorable helplessness and lunacy,
and has been so for many years, and is now, and has been,
since the death of her husband, in 1813, in the care of the
petitioners. Prayer, that they may be appointed to the cus-
tody of her person and estate.

*Henry,* in support of the petition.

*H. Bleecker,* contra, and on behalf of *Philip I. Living-
ston,* uncle of the petitioner, *Mary,* praying for the custody
of the person of the lunatic.

THE CHANCELLOR. I agree with what was said by Lord
*Macclesfield,* in *Dormer's Case,* (2 *P. Wms* 262.,) that there
is no sufficient reason for the old rule against committing
the custody of the person and estate of a lunatic to the heir
at law. The rule, in many cases under our statute, would
take a child from its parent, which would be most unnatural,
and the rule has been held (*ex parte Ludlow,* 2 *P. Wms.*
638.) not to apply to the next of kin entitled under the sta-
tute of distributions to the personal estate. The daughter,
in this case, is the most fit person to take charge of an aged

and afflicted mother ; and the presumption (if one must be   1815
indulged) would be in favour of kinder treatment, and more
patient fortitude, from the daughter, than from the collateral
kindred.    I shall, therefore, direct, that the custody of the
person and estate  of the lunatic be committed to the peti-
tioners, on their giving the requisite security.

(*a*) Vide *ex parte Cocknayne*, (7 *Vesey*, jun. 591.)