## Samuel S. Taff v. John Hosmer and another.

*Irregular writ of error, when bar to a party not joining in it.* The defendants in error moved to dismiss the writ of error on the ground that the plaintiff in error ought to have joined in a former writ. *Held*, that the former writ, being brought by a party who had no right to maintain it, and having been dismissed for that reason, the plaintiff was not bound to join in it, and the same does not bar him.

*Who is a party?* The plaintiff in error appealed from the decree of the Probate Court, establishing the will by which the testator devised his property to his infant son, being the grand-son of the plaintiff; and the proponents of the will having in the Circuit Court joined issue with, and taken a personal judgment against him, affirming the will, with costs; *held*, that the plaintiff in error was clearly a party to such judgment, and might bring error; and that the writ was therefore regular.

*Who may contest a will.* No one can contest a will which only disposes of property, except the heir at law or next of kin of the testator; but where the will appoints guardians to a minor, any one may oppose it who would be entitled to be heard in opposition to an ordinary application for guardianship.

*Next of kin interested in guardianship. Probate and Chancery Practice.* In the absence of statutory regulations concerning the persons entitled to be heard on such applications, resort must be had to the practice in chancery from which our Probate jurisdiction in this class of cases is derived; and as the next of kin were entitled by that practice to be heard, they should be allowed to appear in the Probate Court.

But no one has a right to demand an appointment of himself as guardian, except the persons designated by statute, which mentions none but the parents.

*Who may appeal from Probate.* Any one entitled to be heard on such an application, must be regarded as entitled to appeal from an adverse decision.

*Heard April 18th and 20th. Decided April 25th.*

Special motion to dismiss a writ of error, to Wayne Circuit.

*D. B. Duffield, C. I. Walker* and *G. V. N. Lothrop*, for the motion.

1. Taff cannot at common law bring this writ of error; because it does not appear that he has either been injured by the judgment below, or that he would receive any advantage by its reversal.

No one can bring a writ of error unless he brings himself within this rule of law, and to this end are the authorities from the earliest cases down.—2 *Tidd's Pr.* 1135; *Coke on Litt.* 289.

"A man shall not reverse a judgment for error if he cannot show that the error is to *his disadvantage.*"—*Tey's case,* 5

*Coke*, 38; 4 *Term R.* 510; 2 *Saund.* 46; 16 *Conn.* 536; 27 *Id.* 566; 12 *Wheat.* 554; 13 *Wend.* 280; 17 *Id.* 434; 1 *Scam.* 131; 3 *Id.* 483; 1 *Blackf.* 54.

"Writ of error will be dismissed if the plaintiffs in the writ were not parties to the controversy to be reviewed."—35 *Ill.* 390.

2. The plaintiff in error is not a party "aggrieved," under the statute regulating appeals from the Probate Court, and therefore cannot prosecute this writ.

The language of the statute (Comp. L. § 3631) is: "In all cases not otherwise provided for, any person aggrieved by any order, sentence, decree or denial of a Judge of Probate, may appeal therefrom to the Circuit Court for the same county, by filing a notice thereof, with the Judge of Probate, within sixty days from the date of the act appealed from, with his reasons for such appeal, together with such bond as is required in the next section."

The first clause of this statute is the same as that of the Massachusetts statute as quoted in 2 *Mass.* 140.

In order to constitute a legal grievance under the statute, the party appealing must have a right of property—an *interest* in the administration of the estate.—16 *Pick.* 264.

The following cases show who may or may not appeal from the Probate Court:—2 *Mass.* 140; 9 *Id.* 385; 5 *Cow.* 719; 3 *Pick.* 443; 16 *Id.* 264; 9 *Gill and J.* 324; 6 *Metc.* 194; 10 *Vt.* 420; 34 *Me.* 44; 2 *Root* 219; 3 *Mo.* 269.

In the record, it does not appear that any right of property or interest in this estate, exists in favor of this plaintiff in error.

3. The right to this motion was not waived by omitting to make it in the Court below. It goes to the jurisdiction, and cannot be waived.—1 *Clarke, Iowa*, 492; 3 *Id.* 114; 10 *Iowa*, 380.

Neither is an error going to the foundation of the action waived, by omitting to assign it as error.—24 *Texas*, 159.

And the want of jurisdiction can be taken advantage of for the first time, in the Circuit Court, on error.—12 *Iowa*, 204.

4. At common law, all parties interested must join in the prosecution of the writ of error. — 2 *Tidd's Pr.* 1135; 2 *Burr. Pr.* 136; 2 *Saund.* 101, *note e.*

And the alternative where a party refuses to join in the prosecution of this writ is, that he be forever debarred from bringing another writ.

The common law rule is re-enacted by Comp. L. §5336, and our rules must be in harmony with that.

The alternative must be what we claim it to be, or else there is nothing gained by disseverance, and successive writs may issue to every party, and as we have seen, this is not allowed.—2 *Tidd's Pr.* 1135; 2 *Burr. Pr.* 136.

*Points by T. Romeyn,* against the motion.

1. The plaintiff in error was a party "aggrieved" by the order of the Probate Court, from which an appeal was taken to the Circuit Court.—2 *Comp. L.* § 3007–3631. But for the will which was admitted to probate, he would have been entitled to the guardianship of the minor.—2 *Kent's Com.* 226, *note c.*

2. But whether this be so or not, it is very clear that the defendants in error, not having objected in the circuit to the plaintiff's right to appeal, cannot now raise the question. This is an elementary principle.—2 *Abbott's Dig.* 564, *and cases cited.*

It is no answer to this point to say that the question of jurisdiction is always open. This is true only in a qualified sense. If the court is a court of general jurisdiction, having cognizance of the class of cases in controversy, the right of a particular party to present the case, may be controverted by a motion to dismiss, or a plea in abatement, or otherwise.

But if the defendant, waiving all objections to the person of the plaintiff, goes to trial on the merits, he is precluded

from afterwards raising the question of the capacity of the plaintiff to sue.

In fact, the exercise of jurisdiction by the court in cases where it has general jurisdiction over the subject matter, implies that it has, in effect, adjudicated upon the question of the particular case having been brought within the range of its authority.—6 *Peter's,* 709; 12 *Id.* 657; 2 *How.* 319, 339, 340–2; 2 *Doug. Mich.* 453.

3. The plaintiff in error is not affected by his neglect, or omission to join in the writ of error sued out by the infant, Samuel W. Jackson.

That party had no status in the Circuit Court. It was so decided by this Court. That writ was in law a nullity.

*Points by L. Bishop* and *A. Russell,* on the same side.

1. Taff was the guardian by nature of the infant Samuel W. Jackson, and as such he was entitled to his care and custody, at least till the will should be finally established, if not longer.—1 *Coke,* 153, *note* 2; *Reeve's Domestic Relations,* 314, 315.

The grandfather, as guardian by nature, stands in *loco parentis ;* and parents, and those who stand in the place of parents, are entitled to the custody and control of their minor children or wards.—2 *C. L.* 3303–4; 2 *Kent,* 226, 228; 6 *How.* (*Miss.*) 406.

Upon principle, the relation of natural guardian to a child involves a duty to do whatever belongs to such relation, and it also involves the corresponding right in the guardian to exercise care and custody over the ward.

This is a right in the guardian in no way dependent upon the condition of the ward, or upon his will, for in law he has no will.

If this position be correct, Taff, as the natural guardian of the child, was directly interested to resist and defeat a will which appointed guardians over his ward, and thus affected and destroyed his right. This rendered him an *aggrieved*

party, within the meaning of the statute, by the decree of the Probate Court.

From the decision of the Probate Court, Hosmer and Bissell, as testamentary guardians, could have appealed.—14 *Md.* 8.

If persons thus claiming as testamentary guardians, would be aggrieved in such a case, a guardian by nature could be equally aggrieved by an adverse decision, and could maintain an appeal.

It is very clear that until the will be finally admitted to probate, by a court of last resort, the testamentary guardians could have no control over the child.—2 *C. L.* 2844; 1 *Jarman on Wills*, 218–19.

The general rule is, that any person whose rights are affected by a decree of the Probate Court, may appeal therefrom.—6 *Metc.* 194; 6 *N. H.* 116; 4 *Pick.* 33; 1 *Id.* 71; 2 *Root*, 219; 4 *Mumf.* 403.

A person aggrieved may appeal, though not a party to the proceedings in the Probate Court.—27 *Me.* 78; 18 *Md.* 510.

2. If the Court has jurisdiction of the subject matter, and the parties go on without objection, as they did in this case in the Circuit Court, and the cause is tried and determined, the objection is waived.—4 *Mumf.* 422; 25 *Geo.* 467.

CAMPBELL J.

This is a motion to dismiss a writ of error, on two grounds: *first*, because Taff omitted to join in a former writ which was dismissed; and *second*, because he is not entitled to consider himself aggrieved by the judgment below.

The case in the Court below was an appeal from the allowance by the Probate Court of Wayne County of the last will of Cyrus W. Jackson, whereby he left all his property, with some small exceptions, to his son Samuel W. Jackson, an infant of tender years, and appointed Bissell and Hosmer guardians and executors. The appeal was brought by Taff as grandfather of the child, who was an only child. The decree of the Probate Court was affirmed at the Circuit, and a writ of error

was sued out in the name of the infant and Taff jointly. Taff was summoned to join but failed to do so, and the infant severed and became sole plaintiff in error. This writ we dismissed at our last term in Lansing on the ground that the infant could not complain of a decree affirming one from which he had not appealed. Taff then sued out the writ which it is now sought to quash.

The affidavits presented, certainly have some tendency to show that in all these proceedings Taff has been the moving party, and we cannot help thinking that such is the fact. But if he had any grievance which he had a right to complain of in his own name, we cannot hold that he was obliged to join in an irregular writ with some one who could not lawfully sue it out. Had the former writ been regular, and had judgment been rendered upon it, no doubt he would have been barred. But its dismissal for irregularity could not prevent Taff from suing out a new writ, and while the proceedings are of very doubtful propriety, we cannot say that misconduct has been made out so plainly as to justify us in refusing him a hearing if he has any legal standing in court.

We are, therefore, compelled to consider whether Mr. Taff has the right to consider himself aggrieved by the judgment below.

It appears that, instead of moving to dismiss his appeal in the Circuit Court, the proponents of the will joined issue with him on the merits, and the judgment affirming the will is also in form a personal judgment against him for costs. This liability is clearly a personal grievance of his own, upon which error may be brought, and the writ, therefore, is not irregular. But if he has no further interest in the judgment below, this would give him no right to dispute the will itself, and no error appears to be assigned on this point. We are therefore called upon to examine the more serious question, whether he was legally interested in the main controversy.

The disposition of Mr. Jackson's estate and the appointment of guardians, are both contained in the same will, there being

no codicils. We have no difficulty in holding that Taff could not contest a will merely disposing of the property. He is neither heir, devisee, nor next of kin, and is therefore a stranger to the inheritance. No case has been cited, and we presume none exists, which would favor any pretence of a right to interfere with the disposition of property because he is next of kin to the heir, who is the only person living concerned in opposing a will which lessens his inheritance.

It is claimed, however, that Taff has a legal right to be heard upon any question involving the guardianship of his grandchild, and that on this account he may oppose the will, because the question of guardianship cannot be severed from the rest of that instrument.

Our statutes give to the father, and where there is no father to the mother, (where capable of acting,) control of the infant's person.—2 *C. L.* §§ 3303–4. In all other cases the guardian appointed by the Judge of Probate controls both person and property. And where an infant is under fourteen years of age, the Judge, (except in the cases mentioned,) is not compelled to select the guardian from any particular class of persons.— §3300. We do not find in the statute any right secured to ,,any relatives but the father and mother, to retain control of the infant by any species of guardianship, and as the statute covers the entire subject, we must find his right, if it exists, in some form distinct from any absolute claim to appointment.

The question, then, arises, whether his relationship entitles him to be heard in any proceedings to obtain guardianship. If he could appear as a matter of right, upon any application for that purpose, we think it must follow that he could appear to contest the validity of a will appointing guardians. If he could not interfere of right in the one case, he is upon the same grounds a stranger to the other. Although, if the will is duly executed, no one can complain of the father's choice, yet we think it competent for such persons as are legally concerned, to dispute the fact of any such choice having been made.

We are therefore to inquire what persons are considered as authorized to intervene in the Probate Court, besides the father and mother, and the infant himself.

The statute throws no light upon this question. It simply declares that "The Judge of Probate in each county, *when it shall appear to him necessary or convenient,* may appoint guardians to minors and others," &c.; § 3299; and that "if the minor is under the age of fourteen years, the Judge of Probate may *nominate and appoint* his guardian." § 3300. If we were to assume that this language was designed to exhaust the subject, we should be compelled to find that the law had placed infants under the age of fourteen in a complete state of isolation from all the ties of blood, and all the associations which we are apt to consider as natural bonds of union. It does not seem probable that any civilized legislation would deliberately cut him loose from his relatives altogether, and leave him entirely at the mercy of strangers. There can be no doubt that the Judge of Probate is the ultimate arbiter in the selection, but if no one else has any right to intervene to aid him in making a good and rejecting a bad choice, the condition of a helpless child would be most deplorable. And yet, if there is no law on the subject, it cannot be helped by any regrets.

We do not think the matter has been left in such an anomalous condition. Although Probate Courts are new institutions unknown to the ancient law, and although the appointment of guardians is in this State vested in those courts, yet the jurisdiction is not in itself a new one, and must be considered as having been transferred with such of its incidents as can be properly exercised in the new tribunal. The power of appointing guardians is one which was formerly vested in the Court of Chancery. Authorities have not agreed upon its origin as a prerogative or a judicial authority, but it has long been settled that, so far as infants are concerned, (although perhaps otherwise as to lunatics,) the jurisdiction is one belonging to the Court, and not a personal one in the chancel-

lor.—*Ex parte Phillips*, 19 *Ves.* 118 ; 2 *Fonblanque's Eq.* 232. It has also been sometimes asserted that the jurisdiction of equity was one relating to property rather than to person, but while the Court can rarely find it necessary to interfere when an infant has no estate, yet the jurisdiction does not depend upon that fact.— *Wellesley v. Duke of Beaufort*, 2 *Russ. Ch.* 21. We regret that upon the argument the authorities bearing upon this jurisdiction were not brought to our attention. We have been obliged to make such investigation as our own facilities have enabled us to pursue.

It appears that the general practice, where a guardian was applied for, was to refer it to a master to report the circumstances, &c., of the infant, " *and what relations he has ;*" " *and that all proper parties have notice to attend the said master thereon, and be at liberty to propose such guardian or guardians.*"—*Seton on Decrees*, 277 ; 1 *Turner's Pr. pp.* 257–8. The term *Relations* is said to mean, those who would if he died intestate, be entitled to a distributive share of the infant's estate.—*Hoffman's Master in Chancery*, 131 ; *Wright v. Atkyns*, 1 *Turner & Russ.* 143 ; 4 *Kent Com.* 537, *note a.* The common law rule concerning guardianship in socage which would not allow an heir-at-law to be guardian, has been repudiated by the Court of Chancery as leading to cruel and unnatural results, and is deservedly condemned by Chancellor Kent, who shows how under our American system of descents the mischief of it would be greater even than in England, where heirship is in general confined to a single person.—2 *Kent's Com.* 223. And the rule never excluded those entitled under the statute of distribution.—*Ex parte Ludlow*, 2 *P. Wms.* 638. See also upon the general doctrine, *Livingston's Case*, 1 *Johns. Ch.* 436 ; *Dormer's case*, 2 *P. Wms.* 262 ; *Morehouse v. Cooke*, *Hopk. Ch.* 226.

The practice of excepting to the report in these cases has not prevailed, but it is stated by Mr. Daniell that any person interested may present a petition to have the report referred back.—*Dan. Ch. Pr.* 2081. No cases have come under our

observation showing by what persons these objections may be taken, but it would seem that the next of kin are authorized to do so.—*Dan. Ch. Pr.* 1493. Those who do not intermeddle cannot be considered as parties to the controversy, but it is very plain that all who choose to urge claims to appointment as petitioners or applicants for themselves or others, must be so regarded.—*Teynham v. Lennard,* 4 *Bro. P. C.* 302. It was remarked by Lord Commissioner *Gilbert,* in *Eyre v. Countess of Shaftsbury,* 2 *P. Wms.* 103; "There are often disputes who are the next of kin, or who is the proper guardian. That must be determined somewhere; and where can it be determined but in this Court, where all persons under disability are protected."

It is apparent that if there are not some persons besides the infant who have an absolute right to present their views concerning the guardianship, his interests will often be at the mercy of persons by no means calculated to protect him. And when the settled practice requires certain persons to be at liberty to appear before the master, and requires him to ascertain and report who are the infant's relations, it must be for some useful purpose, and not to preclude them from intervening. Mr. Hoffman evidently understood the English practice as providing for such intervention, and he expresses regret that the New York rules had not expressly required the same precautions adopted in England.—*Hoffman's Master in Ch.* 131, 132.

The case of *Morehouse v. Cooke, Hopk. Ch.* 226, is the only case we have been able to discover, in which a statute like ours, so far as the original right of appointment is concerned, has received construction. In that case a guardian had been appointed on an *ex parte* hearing, without notice to the relations. One of these relatives, who had not appeared before the surrogate, appealed to the Court of Chancery. The chancellor sustained the appeal, censured the surrogate severely for not giving notice, and although the proceedings

had been fair, and the guardian was unexceptionable, he removed him and appointed the appellant in his place.

The attention of the Legislature being thus called to the subject, there are now express enactments on the subject in New York, requiring notice to be given, but only to such relatives as the surrogate may direct. This notice was by the Revised Statutes required to be given to all relatives by blood or affinity in the county.—*Underhill v. Dennis*, 9 *Paige*, 206. Such a notice included of course many persons who had no interest as possible distributees, and the amendatory law, while it left the matter somewhat in the surrogate's discretion, did not confine the notice even to blood relations. The object of such a notice, including so large a range of persons, was mainly to enable him to obtain information concerning the qualifications of candidates and the position of the infant; and it was accordingly held in *Kellinger v. Roe*, 7 *Paige*, 362, that such persons resisting an appointment, but not acting as petitioners, were not parties to the appeal of the unsuccessful applicant whom they had opposed. But in *Underhill v. Dennis*, 9 *Paige*, 202, where a person who was not a relative, but with whom the infant had been left by his mother, applied verbally to a surrogate and was refused guardianship, and appealed from a subsequent appointment of a guardian made on a written petition *ex parte* and without notice, the chancellor entertained the appeal, and reversed the decree as irregular, upon the express ground that notice should have been given to the relatives.

We are entirely satisfied that the next of kin may, if they see fit, make themselves parties to guardianship proceedings, and that when they do so, they may appeal from an adverse decision. And we are therefore of opinion that they may be proper parties to oppose the probate of a testamentary provision appointing guardians. This, of course, gives them no right to oppose it on any ground except that it is not a valid will, as a father's testamentary power cannot be reviewed.

Neither does it give them rights to oppose the probate of any instrument not appointing guardians.

The motion must be denied, but under the circumstances we do not deem the plaintiff entitled to costs. We shall be prepared to hear the case in its order on the merits.

The other Justices concurred.