OLMSTEAD *v.* TAYLOR.

1. GUARDIAN AND WARD —TESTAMENTARY APPOINTMENT—MORTGAGES—PAYMENT—AUTHORITY.

A person named in a will as testamentary guardian, who was not relieved by its terms from giving a bond as such, and who has neither filed a guardian's bond nor secured letters of guardianship, relying solely on letters testamentary, cannot bind his wards by accepting payment of and discharging a mortgage owned by them, which formed no part of the testator's estate.

2. SAME—LACHES.

Complainant in a bill attacking the validity of the payment of a mortgage to one assuming to act as his guardian cannot be charged with laches for failure to bring suit for four years after attaining his majority, where he first learned of the mortgage a short time before filing the bill.

Appeal from Chippewa; Streeter, J., presiding. Submitted April 5, 1901. Decided April 16, 1901.

Bill by Eugene D. Olmstead and Minnie J. Olmstead against Henry H. Taylor and others to foreclose a mortgage. From a decree for complainants, defendants appeal. Affirmed.

*Albert B. Davidson* (*Henry F. Metzger*, of counsel), for complainants.

*Warner & Sullivan*, for defendants.

MOORE, J. This is a bill filed for the purpose of foreclosing a mortgage. The case was heard in July, 1900, and a decree rendered in favor of complainants, from which decree the defendants have appealed.

Not many of the facts are in dispute. In September, 1887, Eugene D. Olmstead was 13 years old. Minnie J. Olmstead was of the age of 9 years. They filed a petition, by their mother and next friend, in the circuit court in chancery, for leave to sell their interest in certain real estate. Their petition was granted, the land was sold, and the mortgage which is sought to be foreclosed in this proceeding was given back to them for its purchase price. The time of payment is somewhat ambiguously stated in the mortgage. It provides for the payment to the said minors of the amount of the principal "at the death of their mother, if they, or either of them, survive her, together with seven per cent. annual interest, payable on the first day of October of each year during the lifetime of said mother and said second parties," etc. This mortgage was given October 10, 1887. The mother died June 24, 1888, leaving a last will, giving her property equally to her three children, and provided therein as follows:

"I hereby nominate and appoint my son Amos Richard Olmstead to be my executor and administrator in all matters pertaining to a division of my estate, with full power to look after, manage, and collect all unsettled

claims, of whatsoever nature, and to do any and all business relating to the management of said estate until the time of its division; and I hereby appoint my son Amos Richard Olmstead to be the guardian of my two minor children, Minnie Jane and Eugene Duncan."

This will was probated. Amos Richard Olmstead gave a bond as executor, and letters of administration were issued to him. He never applied for letters of guardianship, never filed a bond as guardian, and no letters of guardianship were ever issued to him. It is the claim of defendant Taylor that in August, 1888, the mortgage was paid to Amos R. Olmstead, and by him, as guardian, discharged on the margin of the record. Mr. Amos R. Olmstead was not called as a witness.

Minnie J. Olmstead testified that, after the death of her mother, she lived with her brother Amos until she was 16 years old, when she went out to work for others, doing housework; that no money had ever been paid to her on account of this mortgage, and that she never heard of the mortgage until about the time she became 21 years of age, which was in 1899; and that she never knew her brother claimed to be her guardian. Her testimony was not contradicted. The other complainant testified that, after the death of his mother, he lived with his brother, Amos, about three years, going to school winters and working for him summers, and that he did not live with him afterwards; that he never received any portion of the mortgage, and never knew of its existence until about a year before the trial of the case, and never heard that his brother claimed to be his guardian. No testimony was offered to contradict his testimony.

Amos Richard Olmstead reported to the probate court that there was no property in the estate of his mother, and received his discharge in March, 1900. The father of the complainants died before the mortgage was made, leaving an estate which came into the hands of Amos R. Olmstead, who was appointed his administrator. In January, 1900, he filed his final account as administrator of the

estate of his father, in which he charged himself with property amounting to upwards of $1,900, no part of which was the proceeds of this mortgage. He presented a claim for the maintenance of each of the complainants as minors for six years, and was allowed $450 each for their maintenance. The circuit court in chancery never made an order authorizing the transfer of this mortgage to Amos R. Olmstead or any other person, and no proceeding was had or order therein made in that court subsequent to October 8, 1887, when an order was made directing a conveyance.

The circuit judge was of the opinion the payment of the mortgage, if payment was made, to Amos R. Olmstead, was wholly unauthorized.

A number of questions are raised by counsel, some of which we deem it unnecessary to discuss. Counsel say the right to appoint a testamentary guardian is conferred by the statutes of this State (3 Comp. Laws 1897, §§ 8706, 8707). It is their contention that it is not necessary for letters of guardianship to be issued to a testamentary guardian; that the appointment is made by the testator, and becomes operative and effectual when the will is admitted to probate. Their claim is, to state it succinctly and logically, that, when the will of Mrs. Olmstead was probated, the guardian named therein, without the further intervention of the probate court, and without giving a bond, could at once take possession, not only of the property willed to his wards by their mother, but also of the property which came to them from another source, and over which she would have no control without the intervention of a court. They cite *Palmer* v. *Oakley*, 2 Doug. 433 (47 Am. Dec. 41); *Carpenter* v. *Harris*, 51 Mich. 225 (16 N. W. 383); and *Goss* v. *Stone*, 63 Mich. 322 (29 N. W. 735). There are expressions used in these cases which, standing by themselves, tend to support the argument of counsel; but, when the cases are examined, we do not think they establish the doctrine contended for, and which might lead to disastrous results to infants, as is shown if applied to this case.

In the case of *Palmer* v. *Oakley* it was sought to set aside a guardian's sale. The guardian was a married woman, and it was argued that, because of her coverture, she could not execute a legal bond, and, as the statute required a bond to be given by a guardian, therefore she could not become a guardian, and could not make a valid guardian's sale. A bond in that case had actually been given, with sufficient sureties. The court held:

"It is very clear that the words of the act do not make it imperative upon the guardian to execute the bond, and it is equally clear that the end to be attained does not render such a construction necessary. When the guardian gives a bond with sufficient security, the object of the law is fully answered. If the fifth section stood alone, the construction contended for by the plaintiffs might prevail, as the words 'shall give a bond' might reasonably be construed to be equivalent to the words 'shall execute a bond.' I am unable to perceive the necessity for the execution of the bond by the guardian, as no additional security is thereby afforded to the minor in the event of a breach of its conditions."

The case of *Carpenter* v. *Harris* was one where a testamentary guardian was in possession of real estate belonging to his wards. He was forcibly dispossessed by the administrator of their deceased mother. The proceeding was a special one to enable the guardian to resume possession. The court held that the possessory rights of the heirs were superior to those of the administrator. The will appointing the guardian waived his giving a bond. While the record is not clear as to whether letters of guardianship were issued by the probate court, it is a fair inference they were. All the case says upon that subject is:

"Whether the probate court should require bonds or not is not important now, because, as held in *Palmer* v. *Oakley*, 2 Doug. 433 (47 Am. Dec. 41), the failure to give bonds does not vacate the appointment of itself."

In *Goss* v. *Stone* the question was whether an appeal would lie to the circuit court from an appointment of a

guardian by a probate court. In the discussion the court used the following language:

"The appointment of a permanent guardian is one of the most important things that can happen to an infant, involving the custody of all property, and, where there are no parents, generally involving, also, the control of the person. In all countries this jurisdiction has been regarded as of the highest importance. In England it was vested in the highest court in the realm; and, while in this country it has frequently been placed in the courts exercising probate powers, it has never been considered as not within judicial supervision in some way, and has generally been put in courts from which an appeal lies, involving a rehearing on the merits. In *Taff* v. *Hosmer*, 14 Mich. 259, the nature of this power was considered, and cases cited to show both its judicial character and its importance; and in that case a near relative, who, it was expressly decided, could not have appealed from the probate of a will if nothing but property was involved, was held competent to appeal on account of its appointment of a guardian, although, if the will was established, it was held the father's choice would prevail."

It was held an appeal would lie. Incidentally it was said:

"It was suggested that a married woman is not a competent guardian. As the contrary was held in *Palmer* v. *Oakley*, 2 Doug. 456 (47 Am. Dec. 41), and has been recognized ever since, we need not discuss the question."

It will be observed in these cases a bond had been given or had been waived by the terms of the will, and it does not appear that no letters of guardianship had in fact been issued.

The provision for the appointment of testamentary guardians is found in 3 Comp. Laws 1897, § 8706. The following section reads as follows:

"Every such testamentary guardian shall give bond in like manner, and with like condition, as is hereinbefore required of a guardian appointed by the judge of probate: *Provided*, that when the testator, in the will appointing the guardian, shall have ordered or requested that such

bond shall not be given, the bond shall not be required, unless from a change in the situation or circumstances of the guardian, or for other sufficient cause, the judge of probate shall think proper to require it."

The will appointing the guardian in this case was silent as to bonds. The statute relating to bonds of guardians appointed by the judge of probate reads: "Every such guardian shall give bond, with surety or sureties, to the judge of probate, in such sum as the judge shall order, with condition as follows: * * *" And then follow the conditions, which are not material to the question involved here. 3 Comp. Laws 1897, § 8704. This language of the statute is mandatory, and requires a bond to be given unless the giving of it is waived; and it follows that an opportunity should be given to the probate court to pass upon the question of whether a bond shall be given or not. Section 9281; 3 Comp. Laws 1897, requires wills to be probated before they shall pass either real or personal estate. Section 9284 provides that, when the will is probated, letters testamentary, or letters of administration with the will annexed, shall be granted, and when granted shall extend to all of the estate of the testator in this State; but there is not a suggestion in the statute anywhere, to which our attention has been called, that the letters testamentary will authorize the executor to take possession of any property except that belonging to the estate of the testator. When the will provides for the appointment of a testamentary guardian, the various sections of the statute ought to be so construed as to require the giving of such security before the testamentary guardian can act as shall prevent the waste or wrongful appropriation of the estate of the minor. The right to appoint a guardian by will is a statutory right. Before the appointment can become effective, the statutory limitations that are intended to safeguard the interests of the ward must be met. See *Hatch* v. *Ferguson*, 15 C. C. A. 201 (68 Fed. 43, 33 L. R. A. 759); *Wadsworth* v. *Connell*, 104 Ill. 369; *Wuesthoff* v. *Insurance Co.*, 107 N. Y. 580 (14 N. E. 811).

It is said, "Complainant Eugene D. Olmstead came of age some four years before the commencement of this suit, and in the meantime the rights of the subsequent purchasers accrued, and this delay estops him from taking their property to satisfy his claim." The record shows that, within a short time after knowledge came to Eugene D. Olmstead that this mortgage had been given, this bill was filed. We do not think any laches are shown.

The decree is affirmed, with costs.

The other Justices concurred.