## PROVIDENCE COUNTY.

PETITION OF MICHAEL DOYLE, Guardian, for a Writ of *Habeas Corpus.*

A statute provided that an insane person might be placed in a curative hospital by his parents, guardian, relatives, or friends, or, if a pauper, by the overseer of the poor, on certificate of his insanity made by two practising physicians of good standing. When so placed, he might be, according to the statute, " lawfully received and detained " until discharged in one of the modes provided by the same statute. These modes could none of them be resorted to by the person confined, but all of them depended on the action and initiative movement of others.

*Held*, that the provision, whereby he might on such a commitment be " *lawfully* received and detained " until discharged in one of said modes, would, if valid, prevent a discharge on *habeas corpus.*

On application for a writ of *habeas corpus*,

*Held*, that the provision was unconstitutional because violating the fourteenth amendment to the Constitution of the United States, which directs that no State shall " deprive any person of life, liberty, or property without due process of law."

" Due process of law " means at least some legal procedure in which the person proceeded against shall, if he is to be concluded thereby, have opportunity for defence.

*Held*, further, that the writ should issue.

HABEAS CORPUS. The case is stated in the opinion of the court.

*June* 29, 1889. PER CURIAM. This is a petition preferred by the petitioner, as guardian of the person and estate of Michael Gannon, and·in behalf of said Gannon, for his delivery from confinement in the Butler Hospital for the Insane. Said Gannon was committed to said hospital upon the application of his wife before the appointment of the petitioner as his guardian, and is detained there under Pub. Stat. R. I. cap. 74, §§ 11 and 12.[1]    Sec-

---

[1] As follows :

" SECT. 11. Insane persons may be removed to and placed in Butler Hospital or state asylum for the insane, if they can be there received, and, if not, in any other curative hospital for the insane of good repute in this State, managed under the supervision of a board of officers appointed under the authority of this or some other State, by their parents or parent, or guardians, if any they have, and, if not, by their relatives and friends, and, if paupers, by the overseers of the poor of the towns to which they are chargeable ; but the superintendent of said hospital shall not receive any person into his custody, in such

tion 11 authorizes the confinement of insane persons in institutions for the insane within the State by their parents or guardians, and, if they have none, by their relatives and friends, subject to the proviso that the superintendent shall not receive any person " without a certificate from two practising physicians of good standing, known to him as such, that such person is insane." Section 12 provides that the person so committed may be lawfully received and detained until discharged in one of the modes provided by said chapter, none of which, however, can be resorted to by the person confined directly, as of right, in his own behalf.

The petitioner contends that these sections are void, because they are in conflict with the Constitution of the State, Art. I., § 10, and with the 14th amendment to the Constitution of the United States. We will consider the question under said amendment, the provision of the State Constitution being narrower in its scope, unless extended by construction. The special clause of the 14th amendment referred to is this : " nor shall any State deprive any person of life, liberty, or property without due process of law." The contention is that §§ 11 and 12 of cap. 74 deprive the persons committed under them of their liberty without due process of law. Without attempting to define the exact meaning of the phrase " due process of law," it suffices for the present inquiry to say that it means at least some legal procedure in which the person proceeded against, if he is to be concluded thereby, shall have an opportunity to defend himself. The sections of cap. 74 referred to do not provide such a procedure. The only safeguard against an improper commitment which they afford is the certificate of two practising physicians of good standing, a certificate which may be given entirely *ex parte*. We are not prepared to say that even so the sections would be void, if they

case, without a certificate from two practising physicians of good standing, known to him as such, that such person is insane.

" SECT. 12. Any person committed to the charge of any of said institutions for the insane, as aforesaid, in either of the modes hereinbefore prescribed, may be lawfully received and detained in said institution by the superintendent thereof, and by his keepers and servants, until discharged in one of the modes herein provided ; and neither the superintendent of such institution, his keepers or servants, nor the trustees or agents of the same, shall be liable, civilly or criminally, for receiving or detaining any person so committed or detained."

were intended simply for the temporary detention, preliminary to or pending a proper judicial inquiry. The right of personal liberty is to be reasonably understood, and there are many restraints which are allowed as consistent with it. Thus the passengers and crew of a ship are liable to restraints other than those which are merely incident to their position on shipboard. They must submit to such restraints as are necessary for due discipline and the general safety. So a man who attends a religious meeting is bound to observe the decorum appropriate thereto, or he may be arrested and removed. The man who is committing or has committed crime may be taken into custody and held for trial. Children may be confined for instruction or punishment. Sick people in the delirium of fever may be held on their beds by force, and lunatics who are dangerous to themselves or others may be shut up in the dangerous periods of their lunacy. The restraints in these instances are simply such as are appropriate to the occasions for them, or necessary to public justice or security. In these and other such instances, too, the writ of *habeas corpus*, or a civil action for damages, is an effectual remedy for any abuse or excess in the restraints imposed. See Cooley, Constit. Limit. 339, 340, for other instances of permissible restraint.

The counsel for the respondents direct our attention to the cases of *In re Oakes*, Supreme Judicial Court, Mass., January, 1845, 8 Law Reporter, 122, and *Denny* v. *Tyler*, 3 Allen, 225. In the former case, an aged man was committed to an insane asylum by his son. On *habeas corpus* for his release, the court held that a person who is insane or delirious may be confined, or restrained of his liberty, by his family or others, to such extent or for such time as may be necessary to prevent injury or danger to himself or others, and that the restraint may be in his own house or in a suitable asylum. In the second case, a married woman was committed to an insane asylum by her husband for care and treatment, and the court held that she was not entitled to be discharged on *habeas corpus*, so long as the asylum was well managed and she was subjected to no unusual restraint or improper treatment, and her remaining would tend to her recovery. The commitment in both cases was to a private hospital. In the first, the court found that the person confined was insane, after full inquiry into the

facts on testimony. In the second, the fact of insanity does not seem to have been disputed. It does not appear in either case that the person confined was detained under any statute whose constitutionality was questioned, or which precluded inquiry into the fact of insanity on *habeas corpus*.

The peculiarity of our statute is this, that, if said §§ 11 and 12 be constitutional, any person committed under § 11 " may be *lawfully* received and detained " under § 12 until he is discharged in one of the modes provided by said cap. 74. He cannot be discharged on writ of *habeas corpus* if the sections be constitutional, since the proper function of the writ of *habeas corpus* is simply to discharge persons who are unlawfully restrained. The modes of discharge provided by cap. 74 are not modes which can be initiated or pursued by the person confined, but depend on the will and action of others. The persons confined may be removed from the institution where they are confined by the persons who have placed them there, or by the persons who have voluntarily become liable for the expenses of keeping them there, § 13 ; or the superintendent may discharge them on the application of any relative or friend, with the written approval of the visiting committee of the trustees, § 14. The only other mode is by a commission, appointed by a justice of the Supreme Court, to inquire into the question of sanity and report thereon, and by the action of the justice on such report, §§ 15, 16, 17, 18, and 29. Such commission, however, is to be appointed, not at the instance of the person confined, but only on application by some *other* person, who, unless applying under § 29, is required, before the appointment, to pay or secure the payment of the expenses, which are sometimes onerous. And, moreover, it is provided in express terms that no notice of the pendency of the inquiry before the commission shall be served on the person confined, and that such person shall not have the right to confer with counsel, to produce evidence, or be present at the inquisition. The report of such commission may be more worthy of credit than the mere certificate of two physicians ; but, inasmuch as the person confined cannot himself initiate the proceeding, or take part in it in any way when initiated by another, we do not see how it relieves §§ 11 and 12 of the objection that their effect is to deprive the persons confined under them of their lib-

erty without due process of law. It is not enough to answer that the persons are insane, since whether they are insane is the very question which ought to be determined before they are so completely confined as not any longer to have power to institute proceedings for their own relief, or to be heard and adduce evidence in their own behalf.

The petitioner cites *Portland* v. *Bangor*, 65 Me. 120, and *Underwood* v. *The People*, 32 Mich. 1. The first named was the case of an alleged able bodied vagrant committed to the workhouse, pursuant to a statute of Maine, by warrant of two overseers of the poor, on an *ex parte* hearing. The court held the commitment void under the fourteenth amendment, because made without a judicial investigation first had to ascertain whether the charge against the person committed was true, and without giving said person an opportunity to be heard. The case of *Underwood* v. *The People* involved the constitutionality of a statute of Michigan. The statute provided that when, in a trial for murder, the defence of insanity is set up, the jury, if they acquit on that ground, shall so declare in their verdict, and the court shall sentence the accused to confinement in the insane hospital of the state prison until discharged by the governor, on certificate of the circuit judge of the circuit where the trial took place, and of the medical superintendent of the state insane asylum, that he is no longer insane, said certificate to be given upon examination by them, after having been summoned to make it by the prison inspectors. The Supreme Court of Michigan held that the statute was unconstitutional. The reason more particularly dwelt upon by the court was, that the proceeding contemplated for the discharge was not only inquisitorial and *ex parte*, but could not be set in motion except at the will of the prison inspectors ; so that, practically, the liberty of the person confined was left to depend on their pleasure. The case is closely in point. In fact, we do not see how it differs essentially, in the respect noted, from the case at bar. And see, also, *State* v. *Ryan*, 70 Wisc. 676. Our conclusion is that the provisions under which the said Michael Gannon is held are unconstitutional, and that the writ should issue.

*Charles A. Wilson & Thomas A. Jenckes*, for petitioner.

*Ziba O. Slocum, Edwin D. Mc Guinness & John Doran*, contra.