*In the matter of the Petition of* WILLIAM R. LATTA, *for a Writ of Habeas Corpus.*

1. HABEAS CORPUS — *Jurisdiction — Review — Practice.* Where a person adjudged to be insane and committed to an asylum, seeks to be released from custody upon a writ of *habeas corpus*, the only question to be considered is, whether the court had jurisdiction to render the judgment and make the order that was rendered and made. Mere errors and irregularities in that court cannot be reviewed or corrected in a *habeas corpus* proceeding.

2. PROBATE COURT — *Facts Conferring Jurisdiction.* A complaint having been made before a justice of the peace that L. had made a felonious assault upon another, and stating that he was of unsound mind, the justice issued a warrant reciting the allegations of the complaint, including the statement that L. was of unsound mind, and commanding that he be brought before some magistrate of the county, there to be dealt with according to law; and this warrant was filed in the probate court. A statement was entered by the probate judge on the records of his court that one T. filed information from a certain justice of the peace that L. was insane and dangerous to be at large, and ordering that an inquest thereon be held. In addition, the probate judge reduced to writing and placed in the hands of the sheriff an order which recited that the information had been filed in the probate court that L. was insane and a person of unsound mind, and commanding him to bring L. into the probate court on a certain day, then and there to hear and answer what might be alleged, and to abide the judgment of the court in the premises. Upon this order he was brought into court, a hearing had before a jury duly impaneled, and was adjudged to be insane. *Held,* That in a proceeding in *habeas corpus* the foregoing was sufficient to confer jurisdiction upon the probate court to hold the inquiry and render the judgment.

*Original Proceeding in Habeas Corpus.*

THE case is stated in the opinion, filed on April 4, 1890.

*John W. Day,* and *James M. Mason,* for petitioner.

*L. B. Kellogg,* attorney general, for respondent.

The opinion of the court was delivered by

JOHNSTON, J.: The petitioner represents that he is illegally restrained of his liberty and unlawfully confined at the Kansas State Insane Asylum at Osawatomie by A. H. Knapp, the superintendent of the asylum; and he seeks a release by the writ of *habeas corpus.*

Upon an inquest, held May 21, 1885, before the probate court of Wyandotte county, William R. Latta was declared to be insane, and a fit person to be confined in the insane asylum. He was taken to the insane asylum at Topeka, where he remained until March, 1886, when he was discharged from the asylum as not restored to his right mind, and sent to California to remain with friends who resided there. He subsequently returned to Kansas, and on December 16, 1889, an application was made to the probate court for an order committing him again to the asylum, for the reason that he was still insane, and so disordered in his mind as to endanger the persons and property of those with whom he came in contact. Upon this application a writ was issued commanding the sheriff to bring Latta into the probate court, when an examination was had, which resulted in an order directing that he be sent back to the insane asylum. Immediately thereafter, an affidavit was filed by several parties before the probate court alleging that Latta had been restored to his right mind, and should not be recommitted to the asylum. The probate court thereupon determined that a hearing should be had upon the facts alleged, and directed that a jury be impaneled to inquire into the facts. On December 28, 1889, a jury was impaneled, and numerous witnesses were examined in regard to the mental condition of the petitioner, and the jury found that he had

not been restored to his right mind. The court thereupon adjudged that Latta had not been restored to his right mind, and was now insane and incapable of managing his own affairs, and directed that he be recommitted to the insane asylum. He then applied to the judge of the district court of Wyandotte county for a writ of *habeas corpus*, and, after a hearing in which considerable testimony was offered, the application was denied. Failing there, an application for a discharge upon a writ of *habeas corpus* has been presented here.

The only question we can consider is, whether the probate court of Wyandotte county had jurisdiction to render the judgment and make the order that were rendered and made. Mere errors and irregularities in that court cannot be reviewed or corrected in this proceeding. The writ of *habeas corpus* cannot be employed to review the rulings of a court acting within its jurisdiction. If that court had jurisdiction, the inquiry is ended here; and hence many of the matters discussed by counsel, and which might have been inquired into on appeal or proceeding in error, cannot be considered on this application.

1. Habeas corpus—jurisdiction—review—practice.

It is contended that the inquest of May 21, 1885, in which the petitioner was adjudged to be insane, was not based on a sufficient information to give the probate court jurisdiction. While the inquest was initiated in a somewhat informal and peculiar manner, we think the preliminary steps were sufficient, when taken together, to give jurisdiction. It appears that a complaint was made before a justice of the peace, charging that Latta had made a felonious assault upon one Tabler, and also stating that he was of unsound mind. Upon that a warrant of arrest was issued, reciting the allegations of the complaint, including the statement that he was of unsound mind, and commanding that he be brought before some magistrate of the county, there to be dealt with according to law; and this warrant was filed in the probate court. The following was formally entered on the records of that court:

"Now comes C. Tabler and files information from Rezin Wilcoxen, J. P., that one William R. Latta, of Wyandotte

county, is insane, and dangerous to be at large. It is therefore ordered by the court that inquiry thereon be had; and ordered, that said William R. Latta be brought into court, and that venire and subpena issue, returnable May 21, 1885, at 2 o'clock P. M.　　　(Signed)　　　R. E. CABLE, *Probate Judge.*"

The following order to the sheriff was issued by the probate judge, and made a matter of record:

"Whereas, information has been filed in the probate court of Wyandotte county as aforesaid, that one William R. Latta, of and in the county of Wyandotte, is insane, and a person of unsound mind:

These, therefore, command you that you bring the said William R. Latta into the probate court aforesaid, at the court-room in the court-house in the city of Wyandotte, on the 21st day of May, 1885, at 2 of the clock in the afternoon of that day, if he be found in a condition to bring into the court, then and there to hear and answer what may be alleged, and to abide the judgment of the court in the premises; and that you certify how you executed this writ."

This order was signed by the probate judge and the seal of his court attached; and there is an indorsement thereon that the order was received on the 20th day of May, 1885, and served on the following day by bringing Latta into court.

There are two methods of instituting an inquest. One, where an unofficial person gives information in writing to the probate court that anyone is insane, and asks that an inquiry be had; and if the court finds that there is good cause for the exercise of its jurisdiction, it shall cause the facts to be inquired into by a jury; (Gen. Stat. of 1889, ¶ 3677.) The other, where any judge of the probate court, justice of the peace, sheriff, coroner, or constable, shall discover any person, a resident of his county, to be of unsound mind, it is made his duty to apply to the probate court for the exercise of its jurisdiction, and the same proceedings shall be had as in the case of an information by unofficial persons. (Gen. Stat. of 1889, ¶ 3680.) The latter provision does not expressly require that the information shall be in writing, but inasmuch as it is a proceeding which affects the liberty of the citizen, it is safer

to require that the information given by the officer should be in writing, or should be reduced to writing by the probate judge to whom it is communicated. In the present case the information comes from a justice of the peace, and the probate judge commits the same to writing, and in the entry which he makes recites that Latta is "insane and dangerous to be at large." Upon this information he directed that an inquiry be had. The same matter is also reduced to writing in the order directed to the sheriff, wherein it is recited that information has been given that Latta is insane and a person of unsound mind, and in which the court directs that he be brought before the court upon a certain day for the purpose of holding an inquiry. These matters were all in writing, and made a matter of record in the probate court. Together they fairly informed all interested parties of the claim that Latta was insane, and that an inquiry was to be held respecting his sanity. Such proceedings are somewhat summary and informal in their character. The statute prescribes no special form of information, and does not even provide that it shall be verified by the oath of the person giving the information. The substantial requirement is that it shall be such as to satisfy the court that there is good cause for the exercise of its jurisdiction, and also to fairly inform the party and his friends of the nature and purpose of the inquest. If this requirement was met, defects in the form of statement and irregularities in the course of the inquiry cannot avail now and in this proceeding. In criminal cases the fact that a necessary averment of an information is imperfectly stated, or stated in very general terms, will not be held bad after verdict and judgment, although it might have been held insufficient on demurrer or motion to quash. (*The State v. Knowles*, 34 Kas. 393.) In this matter we think enough was set forth in the writings mentioned, although defectively stated and presented, to confer jurisdiction upon the probate court. Although it is earnestly urged that a mistake has been made with reference to the sanity of the petitioner, it appears that the inquiry was open and public,

2. Probate court —facts conferring jurisdiction.

and the judgment rendered was regular, and if any error was committed in the hearing no attempt was made to correct the same upon appeal or by review. Then again, it appears that a very thorough examination was made in December, 1889, with regard to the present condition of Latta's mind, it being alleged in an affidavit that he had been restored to his right mind, and was not insane. Several days were consumed in the inquiry, and scores of witnesses were examined, and it was then found that he had not been restored to his right mind and was then insane. No appeal has been taken from this judgment, and it stands unreversed. If a mistake has been made, as claimed, the statute affords ample remedies to re-examine and retry the question whether he is insane and a fit person to be confined in the asylum. The writ of *habeas corpus*, however, cannot be converted into a proceeding for a review or retrial of the facts.

The petitioner will be remanded.

All the Justices concurring.