## Johnson et al. v. Miller et al.

1. JUDGMENTS AND DECREES.—The judgments and decrees must, if of any effect, be first upon or concerning a subject over which the court has jurisdiction; if the judgment be more than a proceeding *in rem*, that is, if it fasten an obligation upon a person, in other words, be *in personam*, then the court must have had, when pronouncing such judgment, jurisdiction of the person against whom the judgment is.

2. JUDGMENTS—*Decrees—Personal Decrees for the Payment of Money.*— The rendering of personal decrees for the payment of money due because of contractual relations, is not so foreign to the jurisdiction and practice of a court of equity that such decree is void; on the contrary, such decrees have often been held justified by the circumstances which called for them, and upheld by the courts of last resort.

3. JUDGMENTS AND DECREES—*Test of Jurisdiction.*—The test of jurisdiction is, whether the tribunal had *power* to enter upon the inquiry, not whether its methods were regular, its findings right, or its conclusions in accordance with the law.

4. COURTS—*Power and Jurisdiction.*—A court can not act *sua sponte;* some party must in some way call upon it to act, but the power of a court of superior and general jurisdiction to pronounce judgment, when proceeding according to the course of the common law, does not necessarily depend upon the existence or the filing of written pleadings by the parties.

5. PLEADING—*Mutual Altercations of the Parties.*—Pleadings are the mutual altercations of the parties; formerly they were usually put in by their counsel *ore tenus* or *viva voce.*

6. JUDGMENT AND DECREES—*Essentials of the Record—Collateral Attack.*—The essential thing to be shown by the judgment record, is the bringing or coming of the parties before the court, and the hearing and determination by the court of the matter concerning which it is called upon to act. In determining what this matter is, if it can be gathered from the allegations either directly or inferentially that the relief granted or denied, was sought, or that the party was entitled thereto, the judgment will be shielded from collateral attack.

7. JUDGMENT AND DECREES—*Defects in the Petition.*—A judgment is never void for defects in a petition which is amendable.

8. JUDGMENT AND DECREES—*Presumption in Favor.*—Every presumption is in favor of the judgment of a court of superior jurisdiction proceeding within the scope of its general powers.

9. JUDGMENTS AND DECREES—*Collateral Attack—Burden of Proof.* —He who collaterally assails such a judgment must show a want of jurisdiction.

10. CREDITOR'S BILL—*Power to Maintain—Remedy at Law, etc.*— Where a person held as security for a debt certain warehouse receipts, the

Johnson v. Miller.

goods called for by which he could not obtain, because the court had enjoined the warehouse keeper from delivering them, and, therefore, to obtain them, such person gave a bond required by the court conditioned that he would account for their value, it was claimed that, by reason of his holding these receipts, he had not exhausted his security and could not maintain a creditor's bill, etc. *It was held* that the permission to take the goods upon giving bond to account for their value was in no sense giving him an opportunity to avail himself of his security; it was merely constituting him a trustee or a receiver, acting under the leave of the court.

11. Practice in Chancery—*Waiver of Objection.*—The objection to the jurisdiction of a court of chancery to maintain a creditor's bill upon the ground that the complainants have not exhausted their remedy at law, must be made at the earliest possible moment or it will be waived.

12. Chancery—*Re nedy at Law, etc.—Waiver.*—The objection that a complainant has a remedy at law, has frequently been held may be waived by a failure to insist upon the same in the answer, or by conduct inconsistent with an insistence upon such objection.

13. Courts—*Notice of the Contents of an Answer.*—A court of chancery has no knowledge of what is in an answer until its attention is called thereto.

14. Decrees and Order—*Modern Forms.*—The modern rule as to the form of decrees is that the terms "decreed," "resolved," "ordered," "judgment rendered," etc., are fully equivalent to original technical terms, provided the entry shows an actual giving of judgment and exhibits what is required to be specified with clearness and precision.

15. Chancery—*Rule as to Parties Litigant.*—In equity it is the right of each to insist that the real parties in interest shall be made parties to the suit, and that those having no interest or title in its subject-matter be dismissed therefrom.

**Memorandum.**—Creditor's bill. Appeal from the Circuit Court of Cook County; the Hon. Lorin C. Collins, Judge, presiding. Heard in this court at the October term, 1892. Opinion filed February 1, 1893.

## Statement of the Case.

The brothers, Simon, Rudolph and Joseph Deimel, copartners, under the firm name and style of R. Deimel & Bros., were engaged in the furniture business in Chicago for some years prior to January 6, 1890, and during the four years immediately preceding that date they also had a branch store in the city of New York, which was in charge of Simon Deimel.

On the last mentioned date, said Simon Deimel filed a

bill in the Circuit Court of Cook County, against his co-partners, Rudolph and Joseph, in which he alleged the insolvency of the partnership, that his co-partners had over-drawn their accounts, and sought the dissolution of the partnership, and as incidental thereto, the appointment of a receiver to take charge of the assets and distribute the same among the creditors.

Immediately upon the filing of this bill, Rudolph and Joseph Deimel voluntarily appeared without service, and filed their answers, in which they admitted all the allegations of the bill, except that they had overdrawn their accounts, and upon consent of complainant and defendants to said bill, Frank A. Helmer was on said date appointed receiver of said partnership, with the usual powers of a receiver in chancery.

On January 15th, after he had taken possession of a portion of the assets of said firm, and after there had been a reference to a master in chancery to take proofs of claims, the said Frank A. Helmer resigned as such receiver, and Thomas Parker, Jr., was appointed his successor.

The reference to the master directed him to state an account and receive proofs of claims.

In pursuance of the order to make proof of claims, Julius Schmits and the American Oak Leather Company, filed with the master their claims against the estate and made proof thereof. Whereupon the master reported in favor of the allowance of the claims, and that he found due and owing to claimant, Julius Schmits, from the firm of R. Deimel & Bros. and the individual members composing said firm, the sum of $7,967.65, and that there was due and owing to the American Oak Leather Company from the said firm of R. Deimel & Bros. and the individual members composing said firm the sum of $383.10. After these reports had been filed in the Circuit Court, solicitors for complainant and defendants in said bill filed exceptions thereto. These exceptions were stricken from the files because no exceptions had been filed before the master. Of the hearing had before the master, at which the evidence in support of these

claims was heard, the solicitors for complainants and defendants were given and had due notice.

After the exceptions filed to the reports of the master had been stricken from the files, and upon notice to the solicitors for the parties to said bill, the court confirmed the reports of the master, and upon the report on claim in favor of Julius Schmits awarded a decree against the firm of R. Deimel & Bros., and the individual members composing said firm, on the sum of $7,967.65, and ordered that said Julius Schmits have execution therefor.   And upon the report on claim in favor of said American Oak Leather Company, the court awarded a decree in favor of said claimant and against the firm of D. Deimel & Bros. and the individual members composing said firm, in the sum of $383.10, and ordered that said American Oak Leather Company have execution therefor.

Upon the same day that these decrees were entered in the Circuit Court, William H. Johnson, holding a judgment note against the firm of R. Deimel & Bros. for the sum of $9,000, had judgment confessed thereon in the sum of $9,312 against said Simon, Rudolph and Joseph Deimel.

Executions were issued upon these decrees and upon the judgment in favor of William H. Johnson, and placed in the hands of the sheriff of Cook County, to be made in due form of law.   These executions were thereafter returned by said sheriff wholly unsatisfied.

Upon these executions being returned unsatisfied, the said Schmits and the said American Oak Leather Company and said Johnson joined in a creditor's bill, making principal defendants thereto, Rudolph Deimel, Simon Deimel and Joseph Deimel, with whom were joined as associate defendants, Herman Schaffner, Abraham G. Becker, Ignatz Deimel, Anna Deimel, and numerous other parties named in said bill and who are charged with having been parties to frauds alleged to have been practiced by the said principal defendants, and having participated in the fruits thereof.   The bill contains numerous and specific charges of fraud and seeks the relief usually obtained under a creditor's bill.   This

bill was filed in the Circuit Court, and after the filing thereof an order was made extending the receivership created under the bill of Deimel v. Deimel, to this bill.

Answers were ultimately filed by all of the defendants to said bill, except Simon Deimel and Anna Deimel (mother of said partners), whose defaults were taken and entered of record.

Immediately upon the filing (February 6, 1890,) of this bill, there was a reference to a master and the taking of testimony thereunder was commenced and prosecuted until the 22d day of September, 1891, at which time the case came on for final hearing.

On the 7th day of July, 1892, the court dismissed the bill as to each of said complainants for want of jurisdiction. From that decree the appeal herein is taken.

APPELLANTS' BRIEF, MORAN, KRAUS & MAYER, ATTORNEYS FOR WILLIAM H. JOHNSON ET AL., AND GEORGE W. KRET- ZINGER FOR THOMAS PARKER, JR., RECEIVER.

It was insisted that the remedy by creditor's bill had its origin in the narrowness of the common law remedy by writs of execution. This suit proceeds, not for the purpose of adjudicating a contested claim, but rather for the purpose of compelling satisfaction of a claim already adjudicated, and for the satisfaction of which the remedies afforded at law have been found to be inadequate. The remedy is given when the creditor, having reduced his claim to judgment, had execution issued thereon which has been returned unsatisfied, and there exist assets which in equity ought to be applied to the satisfaction of the judgment, and which can not be reached by execution. In short, a creditor's bill is a mode of execution made effective through the courts of equity; it is a continuation of the former controversy, only so far as the fruits of the judgment are concerned. Sec. 49, Chancery Practice, 1 Starr & Curtis, 414; 3 Pomeroy's Equity Jurisprudence, 2d Ed., Sec. 1415; Beach on Modern Equity Jurisprudence, Sec. 883; Hatch v. Door et al., 4 McLean, 112; Tilford v. Burnham, 7 Dana (Ky.), 110; Miller v. Sherry, 2 Wall. 249.

Johnson v. Miller.

When the creditor has reduced his claim to judgment, the judgment is conclusive as between the parties, save when attacked on the ground of want of jurisdiction in the court pronouncing the judgment, or fraud practiced by the successful party in procuring the judgment. Black on Judgments, Vol. 1, Sec. 245; Paul v. Smith, 82 Ky. 451; Harris v. Lester, 80 Ill. 307.

" Where a judgment of a court which has jurisdiction of the subject-matter and of the parties, is either erroneous or irregularly entered, but stands unreversed and unvacated, and with no attempt made to supersede, alter, or in any way reform it, it would seem clear on principle that an execution issued on it can not be quashed on the ground of error or informality." Black on Judgments, Sec. 253; Krug v. Davis, 85 Ind. 309.

If the debtors owe the amount for which judgment was rendered, the judgment will not be set aside at the instance of the judgment debtors, or of a stranger. If the parties to the judgment are satisfied with it no outside person will be permitted to intermeddle with it unless the judgment is collusive and without adequate consideration. Martin v. Judd, 60 Ill. 78; Hier v. Kauffman, 134 Ill. 215, 225, 226; Black on Judgments, Vol. 1, Sec. 260, *et seq.*; Freeman on Judgments, Sec. 512; Freydendal v. Baldwin, 103 Ill. 325; Adams v. Arnold, 86 Ill. 185; Stone v. Towne, 91 U. S. 341.

It follows that a judgment obtained without fraud or collusion, and which concludes the debtor, whether rendered upon default by confession or after contestation, is, upon all questions affecting the title to the debtor's property, conclusive evidence against his creditors, to establish, first, the relation of debtor and creditor between the parties to the judgment, and secondly, the amount of the indebtedness. Wait on Fraudulent Conveyances and Creditor's Bills, 2d Ed., Sec. 74, and cases cited; Dewey v. Moyer, 9 Hun, 473.

Whether a decree is erroneous is not a legitimate inquiry in a suit brought for its enforcement. That matter can be only investigated and determined by a court having a revisory jurisdiction. Milne v. Buskirk, 9 Iowa 558; Black on

Judgments, Sec. 261; Swiggart v. Harber, 4 Scam. 364; Lane
v. Bommelman, 17 Ill. 95; Wales v. Bogue, 31 Ill. 464; Mc-
Bane v. The People, 50 Ill. 503; Chase v. Christianson, 41
Cal. 253; Paul v. Smith, 82 Ky. 449; Hempstead v. Humph-
rey, 38 Ill. 90; Rising v. Brainerd, 36 Id. 79; Condon v.
Beese, 86 Id. 159; Gibboney v. Gibboney, 2 Brad. 322;
Heeney v. Alcock, 9 Id. 431.

APPELLEES' BRIEF, ROSENTHAL, GREGORY, BOOTH & HARLAN,
SCHAFFNER, AND BECKER, ATTORNEYS.

The right of any individual, or partnership, although in-
solvent, to make a preference among its creditors, has never
been questioned in this State. Waddams v. Humphrey, 22
Ill. 661; Cooper v. McClure, 16 Ill. 435; Bowden v. Bow-
den, 75 Ill. 143; Morgan v. Freydendall, 10 Bradwell, 106;
Francis v. Rankin, 84 Ill. 169; Williams v. Galt, 95 Ill. 172;
Frank v. Welch, 89 Ill. 38; Home National Bank v. Sanchez,
131 Ill. 35; Bump on Fraudulent Conveyances, Secs. 178 to
182.

The courts will sometimes set aside a transaction on the
ground of inadequacy of the consideration, but only where
the discrepancy is gross. It is a very difficult task to im-
peach a consideration on the ground of inadequacy, and
involves not only the strictest proof of the inadequacy itself,
but also of an element of bad faith. Jenkins v. Einstein,
4 Biss. 128; Morgan v. Dunton, 40 Ill. 196; Bump on
Fraud. Conveyances, 206; Waterman v. Donaldson, 43
Ill. 29.

Nothing is better settled in the law than that if there is
any presumption at all, it is in favor of the straight-
forwardness and uprightness of every transaction; that
fraud must be proven always affirmatively, like any other
fact, and can not be established or presumed from mere sus-
picion. It is true it may be shown by circumstances, but
under no circumstances except where the evidence is clear
and cogent, and when the inference therefrom is natural
and irresistible. Blow v. Gage, 44 Ill. 208; Shinn v. Shinn,
95 Ill. 477; Brown v. Bierman, 24 Ill. App. 574; Schroeder

v. Walsh, 120 Ill. 403; Wright v. Grover, 27 Ill. 426; Bulock v. Narrott, 49 Ill. 62.

PENCE & CARPENTER, for the executors of Leopold Miller, deceased, and Struss Brothers.

OPINION OF THE COURT, WATERMAN, J.

The question presented to this court, is, had the Circuit Court jurisdiction to hear and determine as to the matters and things set forth and alleged in the bill filed by the American Oak Leather Company and Wm. H. Johnson?

It is insisted that the decrees entered in the case of Deimel v. Deimel, in favor of the American Oak Leather Company, and Julius Schmits against Simon, Rudolph and Joseph Deimel, jointly and severally, and awarding execution against said Deimels, were not merely unwarranted, but so entirely foreign to the jurisdiction of a court of equity that they may be collaterally attacked, being void.

The judgments and decrees of courts must, if of any effect, be, first, upon or concerning a subject over which the court has jurisdiction. If the judgment be more than a proceeding *in rem*, that is, if it fasten an obligation upon a person, in other words be *in personam*, then the court must have had, when pronouncing such judgment, jurisdiction of the person against whom the judgment is.

It is not contended that the court did not have jurisdiction of the subject-matter, upon consideration of which these decrees were rendered; that subject-matter was an indebtedness of the Deimels, severally and collectively, to the American Oak Leather Company, and to Julius Schmits; nor is there any claim that jurisdiction over the persons against whom the decrees were entered was not possessed by the court.

What is insisted is that the rendering of these decrees was a proceeding so unauthorized by the chancery act of this State, and so foreign to the general usage and practice of courts of equity that the decrees are void and may be disregarded whenever and wherever rights are claimed under them, because, as is claimed, the court in rendering such decrees did not pursue any practice recognized or

adopted by courts of equity; but so irregularly, or rather with such total disregard of the forms of equity, went on to render these decrees that they are a mere nullity.

We are thus led to inquire what the forms necessary and essential to the existence of a decree of a court of superior and general jurisdiction are, not what is essential to its validity, but necessary and essential to make a decree that is any judgment at all—an adjudgment not always and everywhere worthless and void.

In the case under consideration, all the forms necessary to bring the Deimels into court for an adjudication and determination as to the indebtedness they were under, which had arisen out of their partnership matters, had been complied with; they, admittedly, were in court for this and other purposes.

Under these circumstances had Julius Schmits filed in that cause a petition setting forth that as such copartners they were indebted to him, and had asked that a hearing might be had and judgment rendered against them severally for the amount of their indebtedness to him, and that he might have execution therefor, there can be no doubt that the court might have entered the decree it did. The rendering of personal decrees for the payment of money due because of contractual relations, is not so foreign to the jurisdiction and practice of a court of equity that such decree is void; on the contrary such decrees have often been held justified by the circumstances which called for them and upheld by the courts of last resort. Richards v. L. S. & M. S. Ry. Co., 124 Ill. 516; and see Stout v. Cook, 41 Ill. 447.

If, then, the decrees under consideration are void, it is because the parties who obtained them did not, by sufficient pleadings, set forth the grounds upon which they asked for relief.

What were the circumstances under which these decrees were rendered, and why, if it be the case, were no formal pleadings filed setting forth the creditors' claims?

Simon Deimel had filed in the Circuit Court a bill setting up his partnership with his brothers, Rudolph and Joseph,

Johnson v. Miller.

alleging the *insolvency* of such firm, asking that it be dissolved, a receiver of its assets appointed to convert the same into money to pay the creditors of said firm in equal proportions as soon as said creditors should have filed their respective claims with the receiver, and also asking that an account might be taken of all the partnership transactions and dealings, and that the assets might be distributed ratably among the creditors of said copartnership.

Rudolph and Joseph Deimel thereupon came in and confessed all these allegations, and consented to the dissolution of the firm and the appointment of a receiver to collect and distribute its assets.

Upon this a decree dissolving the partnership was at once entered, a receiver of its assets appointed, and the cause was referred to a master, for the purpose of stating the account between the complainant and the defendants, and of receiving proof of claims; and it was ordered that proof of claims against said firm might be filed on or before May 1, 1890, and that the master be authorized to fix the time, place and mode in which claims should be proven, subject to the orders and directions of the court.

All this was done by the consent and procurement of the Deimels.

They thus, voluntarily going into court, invited their creditors to go there and prove their claims, confessing at the same time that as the firm was insolvent, its entire assets belonged to its creditors; and thus waived the necessity for formal written pleadings; if, in accordance with the usual custom in such cases the claims were proven and allowed without the formality of written pleadings, such action was had with the consent of the Deimels.

The claims have been allowed by the master, his report was approved by the court, and a decree rendered thereon; from this decree the Deimels prayed and were allowed, but never perfected, an appeal.

If decrees rendered under similar circumstances have ever been held void when collaterally attacked, the numerous and distinguished counsel who represent the collateral attack here made have failed to call our attention to it.

The question is not what the Deimels might have accomplished had they followed up the appeal they prayed, but is the personal decree rendered against them utterly void?

The Deimels themselves invoked the aid of the court to determine the amount of their copartnership indebtedness; having done so, the court had power to determine the mode in which it would proceed, and power to find not merely the existence of a claim against the estate in its hands, but against the Deimels themselves; indeed, every fact necessary to finding and rendering a personal decree against the Deimels, it was compelled to investigate and determine in order to make an allowance of a claim of a creditor to share in the distribution of the assets of the estate; by no possibility could it adjudicate the claim of creditors against the estate without at the same time determining the facts which established their right to a personal judgment against these copartners. When these claims were allowed, the copartnership had, by consent of all the members and decree of the court, ceased to exist; there was then no firm and no firm property; only what had been such.

The test of jurisdiction is, whether the tribunal had *power* to enter upon the inquiry, not whether its methods were regular, its findings right, or its conclusions in accordance with the law. Van Vleet on Collateral Attack, 82.

A court can not act *sua sponte;* some party must, in some way, call upon it to act; but the power of a court of superior and general jurisdiction to pronounce judgment, when proceeding according to the course of the common law, does not necessarily depend upon the existence or the filing of written pleadings by the parties.

Pleadings are the mutual altercations of the parties; formerly they were usually put in by their counsel *ore tenus* or *viva voce.*

The essential thing to be shown by the judgment record is, the bringing or coming of the parties before the court, and the hearing and determination by the court of the matter concerning which it is called upon to act. In determining what this matter is, if it can be gathered from the

Johnson v. Miller.

allegations, either directly or inferentially, that the relief granted or denied was sought or that the party was entitled thereto, the judgment will be shielded from collateral attack. Van Vleet on Collateral Attack, 79; Young v. Lorain, 11 Ill. 624; Fitzgibbon v. Lake, 29 Ill. 165; Turpin v. Dennis, 28 N. E. Rep. 1065; Allie v. Schmitz, 17 Wis. 169; Ricketts v. Spraker, 77 Ind. 371; In re Latta, 43 Kan. 533; Kelly v. The People, 115 Ill. 583; Mathews v. Densmore, 109 U. S. 213; Cornett v. Williams, 20 Wall. (U. S.) 250; Head v. Daniels, 38 Kan. 1; Sannoner v. Jacobson, 47 Ark. 31; Fernald v. Noyes, 30 N. H. 39.

A judgment is never void for defects in a petition which is amendable. Van Vleet on Collateral Attack, 240; Kruse v. Wilson, 79 Ill. 391–394; Booth v. Rees, 26 Ill. 45–49; Dollarhide v. Parks, 92 Mo. 178–188.

Every presumption is in favor of the judgment of a court of superior jurisdiction proceeding within the scope of its general powers. Lawson on Presumptive Evidence, 27; Freeman on Judgments, Sec. 124.

He who collaterally assails such a judgment must show a want of jurisdiction.

There was in the present case no evidence showing a complete record of the proceedings had upon the claims of the complainants herein, in the case of Deimel v. Deimel et al. Enough was shown to establish that in the cause of Deimel v. Deimel et al., the Superior Court was called upon to act upon the subject-matter of the decrees in favor of the American Oak Leather Co. and Julius Schmits, therein rendered. If the pleadings of the case of Deimel v. Deimel et al., which were offered in evidence, had appeared to be insufficient to sustain those decrees, in the absence of evidence that the pleadings, etc., offered, were all that existed, the presumption would have been that other pleadings warranted the action of the court. If these decrees were set up by way of estoppel, different considerations would apply; but the mere fact of the existence of these decrees is alone in controversy; upon that question, as before stated, every presumption is in favor of the jurisdiction of the Superior Court to do what it did.

The right of Johnson to maintain a creditor's bill is denied, because it is said he has not exhausted his remedy at law. He did obtain a judgment in a court of superior jurisdiction, have execution issued thereon, and returned no property found. That warranted the filing by him of a creditor's bill. Such bill being properly filed, thereafter, in the course of the proceedings had thereunder, it appeared that he held as security certain warehouse receipts, the goods called for by which he could not obtain, because the court had enjoined the warehouse keeper from surrendering them; thereupon, to obtain them, he gave such bond as the court required, conditioned that he would account for their value. Such being the case, it is said that he has not exhausted his security and therefore can not maintain his bill; in other words, the court having, by its order, put it out of his power to use his security, is to say to him, because you have not satisfied your debt, with a security which we will not permit you to use, you can not be heard. The permission to take the goods upon giving bond to account for their value, was in no sense giving him an opportunity to avail himself of his security; it was merely constituting him a trustee or a receiver, acting under leave of the court.

If the court, withdrawing all superior claim to the property covered by Gottlieb's (*i. e.* Johnson's) warehouse receipts, had then permitted him to take the same, it would have been entirely proper for it to have required that he, under its direction, sell the goods and apply the proceeds upon his judgment.

It appears that he did sell a portion of them, and that the proceeds were not enough to satisfy his judgment; but whatever he has thus obtained he holds subject to the conditions of his bond.

The case is not like that of Preston v. Colby, 117 Ill. 477.

There is another consideration applicable to the dismissal of this bill for want of jurisdiction.

The lack of jurisdiction insisted upon in the present case, is not that the subject-matter of the bill is foreign to the proper work of a court of equity, but that the complainants have not exhausted their remedy at law.

Johnson v. Miller.

If this be so, it was a matter which could as well have been known to counsel for appellees and by them presented to the court at the outset as now; and such presentation should have at once been made, not by a mere statement thereof in an answer, but the attention of the court should have been distinctly called thereto by a motion or proceeding in effect to dismiss the bill for such cause.

For counsel, knowing of what they deem a valid objection to the jurisdiction of the court, to go on to the taking of some 2,500 pages of testimony, might well be held to be a waiver of the objection that the complainants had not exhausted their remedy at law. If not treated as such waiver, we think that the court might well impose upon the party whose duty it was to have called such objection to its attention, all costs made subsequent to the time of which the court might have been moved to dismiss the bill for such reason.

The objection that a complainant has a remedy at law, has frequently been held may be waived by a failure to insist upon the same in the answer, or by conduct inconsistent with an insistence upon such objection. Stout v. Cook, 41 Ill. 448; Dodge v. Wright, 48 Ill. 388; Lemley v. Golden Co., 16 Brad. 457.

The court has no knowledge of what is in an answer, until its attention is called thereto.

If the position of counsel for appellees be correct, some two months of the time of the court, as well as all the great expense of the taking of this testimony, might have been avoided by an earnest pressing of the objection, by them, so far as appears, first called to the attention of the court eighteen months subsequent to the filing of the bill.

As to the form of these decrees, the modern rule is, the terms " decreed," " resolved," " ordered," " judgment rendered," etc., are fully equivalent to original technical terms, provided the entry shows an actual giving of judgment and exhibits what is required to be specified with clearness and precision. Black on Judgments, Sec. 115.

In equity it is the right of each to insist that the real

parties in interest shall be made parties to the suit, and that those having no interest or title in its subject-matter be dismissed therefrom.

It is immaterial that the suit of Gottlieb was begun by a bill filed in the name of Johnson, to whom Gottlieb's note had been assigned. Nor do we think that Gottlieb was bound to disregard the orders of the court and take his goods from the warehouse, because of a neglect to serve the injunction upon the warehouse keeper.

The court having entertained the opinion that it had no jurisdiction, we do not think that we ought to regard any conclusions it may have arrived at upon the equities of the case; for it is manifest that, reaching the determination it did, as to its jurisdiction, it would not, upon any view entertained as to the question of fraud, etc., have granted relief to the complainants.

The decree of the Circuit Court, dismissing the bill of the American Oak Leather Company and Julius Schmits for want of jurisdiction, is reversed and the cause remanded, with directions to determine the equities of the cause, and enter a decree thereon not inconsistent with this opinion.

GARY, P. J., DISSENTING.

I think that so far as relates to the American Oak Leather Company and Julius Schmits, the action of the Circuit Court was correct. No issue in the suit for a dissolution of the firm of Deimel & Bros. was presented, as to their personal liability.

The manner in which the supposed judgments or decrees were entered is stated in the present bill, and is shown to have been, that on the coming of the master's report, as to claims proved against the assets under the control of the court, the court entered these judgments or decrees.

No such controversy was ever submitted to the court for adjudication.

And further, there are no operative words in the records produced.

The court does not find any amount due; that the claimant is " entitled to a decree;" " is entitled to be paid by the

receiver, *pro rata;*" order to the receiver to pay; and then " that the said claimant is hereby granted a decree for said sum," " against " the Deimels " jointly and severally." An award of execution follows.

The only part of all this verbiage that can be supposed to be a decree is " hereby granted a decree for," etc.

There is no language that the claimant " have and recover " as at law, nor order that the other party " pay " as in equity.

Words that " a decree is granted " for a certain sum to one party and against another, have no legal significance. Robb v. Anderson, 43 Ill. App. 575.