## *Ex parte* DAGLEY.

No. 3948.   Opinion Filed December 3, 1912.

(128 Pac. 699.)

1.   **CONSTITUTIONAL LAW—Due Process of Law—Judicial Hearing.** Chapter 52, Comp. Laws 1909, providing for the commitment of insane persons by a board known as ''commissioners of insanity'' to the insane hospital or asylum maintained by the state, does not violate the provisions of the due process clause of either the state or federal Constitution, since said chapter provides: ''All persons confined as insane shall be entitled to the benefit of the writ of habeas corpus, and the question of insanity shall be decided at the hearing, and if the judge or court shall decide that the person is insane, such decision shall be no bar to the issuing of the writ the second time whenever it shall be alleged that such person has been restored to reason.''

    (a)   The detention of such insane inmate except under proceedings by virtue of a valid statute can be justified on the ground alone that it is best for the care of such inmate or that it would be dangerous for her to be at large.

2.   **HABEAS CORPUS—Insane Persons—Discharge.** For the purpose of the hearing, it being admitted that the person was not only at the time of commitment but is also now insane, whose release from the asylum was sought solely on the ground that the statute under which she was held was void, such party is not entitled, as a matter of right, to be discharged upon that ground alone.

3.   **JURY—Right to Jury Trial.** The right of trial by jury declared inviolate by section 19, art. 2, of the Constitution, except as modified by it, means the right as it existed in the territory of Oklahoma at the time of the adoption of the Constitution.

4.   **SAME—Insane Persons.** The law in force in the territory of Oklahoma at the time of the admission of the state did not give persons, charged with being insane for the purpose of being committed to an insane hospital or asylum of the state, a right of trial by jury on the issue as to insanity.

(Syllabus by the Court.)

Proceeding by Azillah Amanda Dagley for a writ of *habeas corpus*.   Writ quashed, and petitioner remanded.

*John Feland* and *T. G. Chambers,* for relator.

*Cottingham & Bledsoe,* for respondent.

WILLIAMS, J. The petition of Elias Dagley in this case seeks to secure the discharge of his wife, Azillah Amanda Dagley, from the custody of Dr. D. W. Griffin, superintendent of the Oklahoma Sanitarium Company, of Norman, Okla., an institution for the confinement and protection of the insane of said state, under contract and supervision of the state. The response specifically charges full notice and opportunity to be heard, and the appearance in person of Mrs. Dagley before the insanity board. It is then charged that the husband of Mrs. Amanda Dagley did have notice and was present at the trial resulting in the commitment of his wife to the insane asylum, and had every opportunity to introduce evidence in her behalf. It is further alleged in said response that Mrs. Dagley was insane at the time she was committed by the insanity board, and is still insane. Therefore, for the purpose of this proceeding, it is admitted that Mrs. Amanda Dagley is now insane. Such being her condition, she is not entitled, as a matter of right, to be discharged, when the ground alone is that she is held under a void statute.

In *Denny v. Tyler,* 85 Mass. (3 Allen) 225, it is said:

"The infirmity of the argument urged by the learned counsel in support of the writ consists in assuming that the abstract truth that no one can be deprived of his liberty or imprisoned against his will is of universal application, and that this court is bound to interpose and discharge all persons who are subjected to any restraint which is not imposed by the judgment of their peers or the law of the land. But the great truth on which this argument is based, like all general rules and principles, is subject to many qualifications and limitations. Taken in its literal sense, it would render unlawful the restraint of a person under the delirium of a fever or in the paroxysm of a fit. Applied without reference to the paramount law of necessity and humanity, it would render impracticable the performance of many of the duties of domestic and social life. It is therefore to be taken with due limitations, and to be construed in a reasonable manner with reference to the practical concerns of life and the circumstances of each particular case. It certainly can have no legitimate application where it is shown that the person who is alleged to be imprisoned or restrained of his liberty is insane. In the eye of the law, such person has no will. He cannot be said to be capable of exercising an act of volition. In determining on his right to be set free from restraint, his will cannot,

as in case of a sane person, be made a test by which to ascertain the legality of the custody which is claimed over him. The law in such case can look only to the question whether the restraint to which he is subjected is unnecessary and unreasonable; and if it is ascertained that it is not, then the judgment must be that the restraint is not illegal, because it is only such as sound reason and an intelligent will sanction and approve. Such we understand to have been the doctrine which has been heretofore applied by this court in a case similar to the one at bar, and which is briefly reported in 8 Law Reporter, 122."

The same court in *Re Dowell,* 169 Mass. 387, 47 N. E. 1033, 61 Am. St. Rep. 290, said:

"The only ground for the petitioner's discharge which is set forth in the petition or relied on in argument is that the provisions of statute under which he was committed are unconstitutional as being in violation of article 12 of the Declaration of Rights and of the fourteenth amendment to the Constitution of the United States. The former provides that no subject shall be deprived of his liberty but by the judgment of his peers or the law of the land; the latter that no state shall deprive any person of liberty without due process of law. So far as the Declaration of Rights is concerned, it has been twice determined that a person who is in fact insane is not entitled to be discharged from a hospital on *habeas corpus,* provided the court is satisfied that the restraint and treatment there will be beneficial to him. *In re Oakes,* (1845) 8 Law Rep. 122; *Denny v. Tyler,* 3 Allen [Mass.] 225. In both of these cases the person was committed without any previous hearing, and without the order of the judge. It was held that the provision of the Declaration of Rights is not of universal application, and that it does not entitle an insane person to be set at liberty, if restraint is proper under the circumstances of the particular case. In the present case it must be assumed, from the petition, report, and argument, that the petitioner is in fact insane, and that the restraint and treatment of the hospital are beneficial to him. The case therefore falls directly within the decisions cited."

The following authorities support the rule announced in *Re Dowell, supra: In re Boyett,* 136 N. C. 415, 48 S. E. 791, 67 L. R. A. 972, 103 Am. St. Rep. 944, 1 Ann. Cas. 729; *King v. Coate,* Lofft, 73-76; *Brookshaw v. Hopkins,* Lofft, 240; *In re Shuttleworth,* 9 Q. B. 651; *Rex v. Gourlay,* 7 B. & C. 669; *Anderson v. Burrows,* 4 C. & P. 210; *Rex v. Turlington,* 2 Burr.

1115; *Rex v. Clarke,* 3 Burr. 1362; *Scott v. Wakem,* 3 F. & F. 328; *Symm v. Fraser,* 3 F. & F. 859; *Hall v. Semple,* 3 F. & F. 337; *Fletcher v. Fletcher,* 1 Ell. & Ell. 420; *Ex parte Greenwood,* 24 L. J. Q. B. 148; *Look v. Dean,* 108 Mass. 116, 11 Am. Rep. 323; *Colby v. Jackson,* 12 N. H. 526; *Davis v. Merrill,* 47 N. H. 208.

For the purpose of committal for treatment in an asylum, it is not necessary that, in addition to insanity, there should be evidence of danger to the lunatic or others beyond what is implied in the insanity itself. The detention of the inmate, except under proceedings by virtue of valid statutes, can be justified only on the ground that it is for her care or that it would be dangerous for her to be at large. *Lott v. Sweet,* 33 Mich. 308; *Van Deusen v. Newcomer,* 40 Mich. 142.

In *People ex rel. Peabody v. Chanler, Sheriff, et al.,* 133 App. Div. 159, 117 N. Y. Supp. 322, proceedings by writ of *habeas corpus* by the people of the state on relation of A. Russell Peabody in behalf of Harry K. Thaw against Robert W. Chanler, sheriff of the county of Dutchess, was under consideration. At page 163 of 133 App. Div., at page 325 of 117 N. Y. Supp., it is said:

"In Dowdell's case, 169 Mass. 387, 47 N. E. 1033, 61 Am. St. Rep. 290, the petitioner applied for his discharge from commitment in that the statute was unconstitutional because it did not require any notice to the insane person before the commitment was signed, and so violated the provisions of the Declaration of Rights that no subject shall be deprived of his liberty but by the judgment of his peers and the law of the land, and the provisions of the fourteenth amendment to the Constitution of the United States that no state shall deprive any person of liberty without due process of law. And the court said: 'The order of commitment settles nothing finally or conclusively against the person committed. It does not take from him the care or control of his property. It is not equivalent to the appointment of a guardian over him. *Leggate v. Clark,* 111 Mass. 308, 310. He is entitled, as a matter of right, to institute judicial proceedings under the statutes to determine the necessity and propriety of his confinement. He is not denied the same protection of the laws which is enjoyed by all other persons in the commonwealth under like circumstances. He is not, therefore, deprived of his

liberty without due process of law, according to the judicial con-
struction which has been put upon those words.  *   *   *   And
the right to institute judicial proceedings under the statutes is a
sufficient protection of the liberty of the subject to meet the
constitutional requirements.  *   *   * ' "

In *Sporza v. German Savings Bank,* 192 N. Y. 8, 84 N. E.
406, it is said:

"The proceedings thus provided for by the insanity law are
in no wise designed as a substitute for those upon an inquisition
*de lunatico inquirendo.*  The purposes of the insanity law are
protective merely, although an order for a commitment there-
under is described as 'adjudging such person to be insane.'  The
order is not, strictly speaking, a judgment at all, for it does not
affect the status of the person alleged to be insane.  This has
been held in regard to a similar statute in Massachusetts, where
it was said:  'The order of commitment settled nothing finally
or conclusively against the person committed.  It does not take
from him the care or control of his property.  It is not equivalent
to the appointment of a guardian for him.  He is entitled, as
a matter of right, to institute judicial proceedings under the stat-
ute to determine the necessity and propriety of his confinement
under the statute.'  *Matter of Dowdell,* 169 Mass. 387, 47 N. E.
1033, 61 Am. St. Rep. 290."

In *Ex parte Scudamore,* 55 Fla. 211, 46 South. 279, it is
said:

"In the case of *Dowdell, Petitioner,* 169 Mass. 387, 47 N. E.
1033, 61 Am. St. Rep. 290, it is held that the right to institute
judicial proceedings under the statute is a sufficient protection
of the liberty of the subject to meet these constitutional require-
ments, even though no sort of notice to the lunatic was given
in the initial proceeding by which he was so adjudged. * * * "

The Dowdell case is cited also with approval in *Re Michael
Gannon,* 16 R. I. 537, 18 Atl. 159, 5 L. R. A. 359, 27 Am. St.
Rep. 759; *Ex parte Clark,* 86 Kan. 539, 121 Pac. 492; *In re
Boyett, supra.*

In *Doyle, Petitioner,* 16 R. I. 537, 18 Atl. 159, 5 L. R. A.
359, 27 Am. St. Rep. 759, and *Underwood v. People,* 32 Mich.
1, 20 Am. Rep. 633, the statutes were declared void on the ground
that they did not provide any mode of procedure whereby the
person committed to an asylum could avail himself as of right,
in his own behalf, for his discharge.

In *Re Croswell,* 28 R. I. 137, 66 Atl. 55, 13 Ann. Cas. 874, paragraph 3 of the syllabus is as follows:

"Such statute does not violate the provisions of the fourteenth amendment of the federal Constitution that no state shall deprive any person of life, liberty, or property without due process of law, or deny to any person the equal protection of the laws, since by statute the function of the writ of *habeas corpus* has been enlarged to apply to cases of commitments in insane hospitals, and it is made the duty of the court, upon application for such writ, 'to inquire and determine as to the sanity or insanity or the necessity of restraint of the person confined, at the time such application was made,' and to discharge the person confined if it appears, upon the verdict of a jury or in the opinion of the court, that such person is not insane or is not dangerous to himself or others, and ought not longer to be confined."

After the decision in the Doyle case the Legislature of Rhode Island amended the law so as to extend the remedy of the *habeas corpus* in case of insanity commitments, so as to have the insanity of the person determined in such proceeding, and thus the Crosswell case is clearly in point in sustaining the validity of the Oklahoma statute. In the United States it seems to be clear that the courts of equity, in the absence of statutory provisions investing them with a lunacy jurisdiction, derive such a jurisdiction from the commonwealth *ex necessitate* for the protection of the persons and property of the citizens. 22 Cyc. p. 1120. But generally the jurisdiction over insane persons and their estates is committed by statute either to the courts of equity as such, or to other courts exercising general probate jurisdiction. The only remedy in a court of law for the discharge of persons insane is a writ of *habeas corpus. In re Bresee,* 82 Iowa, 573, 48 N. W. 991; *Commonwealth v. Lecky,* 1 Watts (Pa.) 66, 26 Am. Dec. 37; *Ex parte Bedard,* 106 Mo. 617, 17 S. W. 693.

Assuming that sections 3701-3720, Comp. Laws 1909, are in force in this state, though the same did not require notice preliminary to a commitment to the asylum, the same would not be violative of the state or federal Constitution for the reason that section 3717 provides for a judicial hearing. Said section is as follows:

"All persons confined as insane shall be entitled to the benefit of the writ of *habeas corpus,* and the question of insanity shall be decided at the hearing, and if the judge or court shall decide that the person is insane, such decision shall be no bar to the issuing of the writ the second time whenever it shall be alleged that such person has been restored to reason."

The right of trial by jury declared inviolate by section 19, art. 2, of the Constitution (section 27, Williams' Ann. Const. Okla.), as modified by the Constitution itself, means the right as it existed in the territory of Oklahoma at the time of the adoption of the Constitution. *State ex rel. West v. Cobb,* 24 Okla. 662, 104 Pac. 361, 24 L. R. A. (N. S.) 639. Such right does not appear to have existed under the territorial form of government. See, also, following authorities holding that a jury trial in such cases is not essential: *State v. Linderholm,* 84 Kan. 603, 114 Pac. 857; *In re Latta,* 43 Kan. 533, 23 Pac. 655; *Ex parte Clark,* 86 Kan. 539, 121 Pac. 493; *County of Black Hawk v. Springer,* 58 Iowa, 417, 10 N. W. 792; *Nobles v. Georgia,* 168 U. S. 398, 18 Sup. Ct. 87, 42 L. Ed. 515; *In re Boyett, supra; In re Dowdell, supra; In re Ferrier,* 103 Ill. 367, 43 Am. Rep. 10; *In re Bresee,* 82 Iowa, 573, 48 N. W. 991; *Fant v. Buchanan* (Miss.) 17 South. 371; *Ex parte Scudamore,* 55 Fla. 211, 46 South. 279; *In re Le Donne,* 173 Mass. 550, 54 N. E. 244; *De Hart v. Condit,* 51 N. J. Eq. 611, 28 Atl. 603, 40 Am. St. Rep. 545; *People v. Baker,* 59 Misc. Rep. 359, 110 N. Y. Supp. 848; *In re Brown,* 39 Wash. 160, 81 Pac. 552, 1 L. R. A. (N. S.) 540, 109 Am. St. Rep. 868, 4 Ann. Cas. 488; *State v. Snell,* 46 Wash. 327, 89 Pac. 931, 9 L. R. A. (N. S.) 1191.

Under the present status of the record, the writ will be quashed and Mrs. Dagley remanded to the custody of the superintendent of the asylum. If the relator desires to make an issue on the question of her insanity, this writ of *habeas corpus* will be made returnable before a district judge of the county in which she resided at the time of her commitment to the asylum for a hearing on said issue.

All the Justices concur.