WALLACE W. MUNGER, GUARDIAN, ETC., v. THE JUDGE
OF PROBATE OF KALAMAZOO COUNTY.

86  363
99  145
86   363
151   4 80.

*Incompetent persons—Appointment of guardian—Notice—Juris-
diction—Order.*

1. Notice by publication is authorized by statute in certain cases,
   but when given without such authority it is of no value.
2. Under How. Stat. § 6798, which authorizes a judge of probate,
   in the absence of a statute directing the manner of giving
   notice of proceedings in probate court, if notice is required by
   law or by him deemed necessary to be given, to order it to be
   given in such manner and for such length of time as he shall
   deem reasonable, a valid notice may be given by publication to
   non-resident heirs of an application for the appointment of a
   guardian for an alleged incompetent person.
3. The object of notice to the heirs of an alleged incompetent per-
   son of an application for the appointment of a guardian is
   principally to protect such person in his rights; and while such
   heirs ought to have notice, because of their presumptive inter-
   est in the estate of the alleged incompetent, such notice to
   non-resident heirs is not absolutely necessary to the jurisdiction
   of the court, where a majority of those thus interested are
   residents of this State, and are duly notified of the proceedings.
4. The language used in the cases of *In re Bassett*, 68 Mich. 348,
   and *In re Myers*, 73 Id. 401, which may seem to warrant the
   assumption that some kind of a notice must be given to all of
   the next of kin or presumptive heirs of such incompetent per-
   son in order to confer jurisdiction to make such appointment,
   must be considered in reference to the facts of those cases.
5. The probate court will not be ousted of jurisdiction in proceed-
   ings for the appointment of a guardian for an incompetent
   person because of the failure to serve notice upon the guardian
   of two minor heirs, whose name and place of residence is not
   shown in the record, where one of said heirs is of age when
   the case is heard in the appellate court, and the guardian of
   the other appeared on the hearing in the probate court, and
   testified to the incompetency of the alleged incompetent,
   although not served with notice, which was served on both of
   the minors.
6. The omission of the name of the person appointed guardian of

an incompetent person from the decree is a mere clerical error, which the probate court can correct at any time.

7. A statement in an order for the appointment of a guardian for an incompetent person, that it satisfactorily appears to the court that such person is mentally incompetent to have the charge and management of his property and person, and that a guardian should be appointed for the reason that he is mentally incompetent to have the charge and management of his person and estate, is a sufficient adjudication of such facts.

*Certiorari* to review proceedings resulting in an order declaring petitioner's appointment as guardian of an alleged incompetent person void. Argued May 7, 1891. Decided June 5, 1891. Order reversed. The facts are stated in the opinion.

*Volney H. Lockwood*, for petitioner.

*O. T. Tuthill* and *Osborn & Mills*, for respondent.

MORSE, J. Wallace W. Munger was appointed guardian of Edmond Chase, an alleged incompetent person, by Hon. Allan M. Stearns, judge of probate of Kalamazoo county, on the 30th of July, 1888, and duly qualified and acted as such guardian without question until November 14, 1890, when the alleged incompetent filed a petition in the probate court of said county, setting forth that he was never mentally incompetent to have the charge and management of his property, which was acquired by his own exertions, and remained to him after deducting the necessary expenses by him incurred in rearing a large family of children; that "he is informed and believes" that the proceedings before the probate court in appointing said Munger his guardian "were so defective that they are wholly vicious and void, and that no jurisdiction was ever acquired by the court in said matter," and that said Munger was never legally appointed his guardian.

The petition set forth the names and residences of all his next of kin, to wit, his wife, one son, and four daughters, residing in Kalamazoo county, Mich., and three sons, residing, respectively, in Kansas, Missouri, and Nebraska; also one grandson, heir of a deceased son, residing in Kalamazoo county, Munger being his guardian; and a grandson and granddaughter residing in the same county, heirs of a deceased daughter; and a grandson, heir of another deceased son, living in Chicago, Ill.

The petitioner prayed that the proceedings before Judge Stearns might be set aside, and that he be permitted to resume the management and control of his property, averring that he was fully competent to manage and control the same, and that he be decreed mentally competent to have the charge of his estate; that a hearing be appointed, and notice of the time and place of the same be given to all his presumptive heirs and their legal representatives.

Hon. James M. Davis, the present probate judge of said county, on receiving and filing the petition, appointed a day of hearing, of which personal notice was given the heirs in this State, and ordered that notice be given by publication to the non-resident heirs by publishing a copy of the order for hearing in the Kalamazoo Weekly Telegraph for three successive weeks previous to the day of hearing, which was done.

No special defects in the proceedings before Judge Stearns were pointed out in the petition, nor does it appear from the record that any question was raised upon the hearing as to the jurisdiction of Judge Stearns, except the want of notice to some of the next of kin of the alleged incompetent, more especially the non-resident heirs. The probate judge held the appointment of Munger void, and made an order accordingly. The order

determines that the proceedings to appoint Munger guardian, and declaring Chase an incompetent,—

"Were taken and had without jurisdiction or authority, because of want of notice to all the next of kin of said Edmond Chase of said proceedings, and were and are null and void; and it further appearing to the court that it is therefore unnecessary for the present disposition of the matter of said petition to determine upon this hearing whether the said petitioner is now mentally competent or not."

In his return to the writ the probate judge says that upon the hearing—

"Considerable proof was introduced upon his [Chase's] part tending to show that he was not then mentally incompetent, but was, in all respects, sane and mentally competent, and entitled to have the care and management of his property and effects, and that, on the other hand, considerable testimony was also introduced in behalf of said guardian, and all others interested in opposition to said petition, tending to show that, at the time of the hearing, said Edmond Chase was not mentally competent to have the care and custody and management of his estate, but that it was proper that a guardian of his person and estate should be continued for that purpose."

It is plain from this return that it was not clear to the mind of the judge of probate, from the whole testimony, that Chase, at the time of the hearing, was mentally competent to have his estate restored to him.

It is contended by the counsel for the defendant in *certiorari* that, under the decisions of this Court, some kind of notice to all the next of kin or presumptive heirs is absolutely essential in order to confer jurisdiction upon the judge of probate to entertain proceedings to declare a person mentally incompetent to manage his estate, and to appoint a guardian of his person and estate, and we are cited in support of this contention to

the following cases: *In re Bassett,* 68 Mich. 348; *In re Myers,* 73 Id. 401; *North v. Joslin,* 59 Id. 625.

While the language of the opinion in some of these cases may seem to warrant this assumption, it must be remembered that in both the Bassett and Myers cases no notice was served upon the next of kin residing in the immediate neighborhood of the alleged incompetent, and within the jurisdiction of the probate court; and the language of those opinions must be considered in reference to the facts of the particular case in hand when the opinion was written, and to which it referred.

In Bassett's case, his wife, presumably under the law as much interested in his estate as any one, was not mentioned in the petition, nor did she have any notice of the proceedings. It was held that the petition should show all persons who would be affected by the action sought to be taken, and that this would manifestly include the presumptive heirs at law and distributees. There can be no fault found with the petition in the present case in this respect. It set out the names of all the presumptive heirs at law, and gave their places of residence. The court was fully informed as to the persons liable to be interested in the proceedings.

In the Myers case, the order of the probate judge directed that notice of the hearing should be given the next of kin, in effect, as it provided that such next of kin be required to appear at said hearing, and show cause, if any, why the prayer of the petitioner should not be granted. The petition was made by a daughter of Mrs. Myers, the alleged incompetent, and notice was served only on Mrs. Myers and a daughter, Mahala Curtis. There were living in the same county three sons of Mrs. Myers, one of them residing in the same township with the petitioner and Mahala Curtis. The petition was open to the same objection as in the Bassett case, as

it gave the court no information that any one save the
petitioner had any interest in the matter to be adjudi-
cated by the court. It was there held that Mrs. Myers,
if an incompetent person, could receive no protection
from a notice served upon her, and that she was entitled
to have her next of . kin notified of the proceedings,
although the statute in terms did not require such notice
or provide for it. In saying, as we did in that case,
that the presumptive heirs were entitled to notice, we
had reference to the case in hand. The parties interested
were all within the jurisdiction of the probate court, and
could have been personally served with notice.

In the case now before us, the petition was made by
.the wife of the alleged incompetent, and the following
persons were notified of the hearing: Charles Chase, a
son of Edmond Chase; four daughters, Mary Jane Mun-
ger, Julia A. Hoag, Frances R. Stevens, and Elsie A.
Smith; Walter Chase, a grandson; and Randall Rumery
and Sylvia Rumery, grandson and granddaughter. These
persons represented, with the wife, the interests of said
wife and seven out of eleven parts of the estate if it.
should descend to the children, and the heirs of the
children, of Edmond Chase, as the statute, in the absence
of other disposition, would place it at his death. Three
sons, residing, respectively, in Kansas, Missouri, and
Nebraska, and one grandson, living at Chicago, were not
notified of the proceedings.

We think, under the circumstances of the case, that
the probate court acquired jurisdiction in the premises,
and that it was not necessary to notify these non-resi-
dent heirs. If these heirs had wholly composed the next
of kin of Edmond Chase, the case would have been dif-
ferent; but, as it is, everybody interested in the case,
within the State of Michigan, received notice, and at
least seven adult persons, interested presumably in the

estate, being presumptive heirs at law, had personal knowledge of the proceedings.

The statute only provides for a notice to be given the supposed insane or incompetent person of the time and place of hearing the case, not less than 14 days before the time so appointed. How. Stat. § 6314. In the cases heretofore under consideration as to notice, the persons entitled to the same were within reach of the court by personal service. There are but two ways by which the heirs at law in this case residing outside of the State could be notified,—one by sending such notice by mail or messenger, and the other by publication, as was done in the proceeding before us, to vacate Munger's appointment. There is no statute in this State or practice authorizing the first mode of service. If sent by mail, and not received, it would not be valid, and the sending of a messenger could hardly be required. Notice by publication is authorized by our statute in certain cases, but it is good for nothing in a case where it is not authorized. The statute relating to this proceeding does not authorize it in this case, as it only provides for notice upon the supposed incompetent; but there is a general statute which provides that—

" When notice of any proceedings in a probate court shall be required by law, or be deemed necessary by the judge of probate, and the manner of giving the same shall not be directed by any statute, the judge of probate shall order notice of such proceedings to be given to all persons interested therein in such manner and for such length of time as he shall deem reasonable." Id. § 6798.

By virtue of this statute, if it were necessary to notify non-resident heirs, the judge of probate could undoubtedly authorize notice by publication, which would be valid. But the publication of such notice would in fact, in many cases, give no notice at all to such non-resident heirs,

and would only be notice because the law declares it to be a substituted service of notice.

The object of notice to the heirs, as said *In re Myers*, *supra*, is principally to protect the alleged incompetent in his rights; and while the heirs at law ought also to have notice, because of their presumptive interest in the estate of such incompetent, we do not think it absolutely necessary that non-resident heirs should have such notice, where a majority of those interested in the alleged incompetent and his estate are residents of this State, and duly notified of the proceedings. There was no showing before Judge Davis that any fraud, wrong, or oppression to the incompetent, or any of his heirs, was employed in the appointment of Mr. Munger, or even that any single heir has ever objected to his guardianship, nor that any reason exists why he should not continue in such guardianship, if a guardian is necessary.

The judge of probate returns that, although Randall and Sylvia Rumery were served with notice, they were each under the age of 21 years at the time, and under guardianship, and their guardian was not served with notice; but it appears from the record that George W. Smith, who is now, and presumably was then, the guardian of Randall Rumery, appeared at the hearing before Judge Stearns, and testified that Edmond Chase was incompetent to do business; and it also appears that Sylvia Rumery is now of age. She was therefore old enough at the time of the proceedings before Judge Stearns to know what the notice was, and we are not inclined to hold that the judge of probate obtained no jurisdiction to entertain the proceedings because the guardian of the minors was not served with notice, when the record fails to show the name and place of residence of such guardian.

The omission of the name of Munger in the decree appointing a guardian is a mere clerical error, which the court is authorized to correct at any time. The petition asked for his appointment, he was appointed, and letters issued to him, his bond filed and approved, and he has been acting and reporting his doings to the probate court for over two years. He cannot be ousted on a mere technical omission to fill his name in a blank in the printed form of a decree.

Many other objections are raised here to support the order of Judge Davis, which do not appear to have been raised or to have influenced his decision in this case, as he has taken pains not only to record his reasons for his action in this order, but also in his return. From these it appears that he declared the appointment void solely upon the ground of want of notice of the hearing to all of the next of kin. We should not consider these objections in order to find a reason for sustaining the order, and we notice them only to prevent further litigation.

Mr. Munger is still guardian and entitled to hold his trust, unless it can be shown that Edmond Chase is now competent to manage his own affairs, or that Munger is unfit or incompetent to retain the place. The fact that he tendered his resignation cuts no figure in the case. Before it was accepted he withdrew such resignation, which he had a perfect right to do.

It is also contended that the order appointing Munger is open to the same objection as in the North and Bassett cases, in that the order did not adjudge Edmond Chase insane, or mentally incompetent to have the charge and management of his property. This is not so. The order expressly declares that it appears satisfactorily to the court that said Chase—

"Is mentally incompetent to have the charge and management of his property and person, and that a

guardian should be appointed for the said Edmond Chase for the reason that he is mentally incompetent to have the charge and management of his person and estate."

This is a sufficient adjudication.

The order of the probate court, decreeing that the appointment of Munger as guardian was null and void, is reversed and vacated, with costs of this Court to said Munger, to be paid out of the estate of said Edmond Chase.

The other Justices concurred.