## WAGNER *v.* WAYNE PROBATE JUDGE.

1. INSANE PERSONS — GUARDIANSHIP — SPECIAL GUARDIANS — PROCEDURE.

   Where an application is made under section 8710, 3 Comp. Laws, for the appointment of a special guardian for an incompetent person, pending appeal from the appointment of a general guardian, in which the issue of incompetency has been determined, it is not necessary that there shall be a new hearing and a new determination of that issue.

2. SAME — SPECIAL GUARDIAN — APPOINTMENT — DISCRETION OF COURT.

   Where a general guardian, appointed pursuant to proceedings regular in form, is interfered with in the performance of his duties by an appeal or otherwise, the question of appointing a special guardian is addressed to the sound discretion of the court and is determined by the apparent condition of the ward, or of his estate, or both.

3. SAME—AUXILIARY PROCEEDING—SUFFICIENCY OF SHOWING.

   The application for a special guardian in such case is auxiliary to the proceedings for a general guardian, and the necessary showing may be made by the proofs produced at the hearing upon the original application.

4. SAME—PREMATURE APPLICATION.

   Proceedings for a special guardian are not premature because taken before the appeal from the appointment of the general guardian is perfected.

5. SAME—APPLICATION—PERSONS ENTITLED.

   Jurisdiction to appoint a special guardian does not depend upon the particular relationship to the alleged incompetent of the person suggesting or applying for the appointment of the special guardian.

6. SAME—GENERAL GUARDIAN—APPLICATION—PERSONS ENTITLED.

   Under section 8709, 3 Comp. Laws, the person applying for the appointment of a general guardian of an incompetent person need not be a blood relative, the words "relations or friends" in the statute having a broader meaning than the single word "relations."

Certiorari by Christine Wagner to review an order of Edgar O. Durfee, probate judge of Wayne county, appointing a general and special guardian. Submitted January 7, 1908. (Calendar No. 22,570.) Affirmed January 31, 1908.

*Devine & Snyder*, for plaintiff in certiorari.

*Haug & Yerkes* (*George F. & Peter J. Monaghan,* of counsel ), for defendant in certiorari.

OSTRANDER, J. The record of a proceeding to appoint a special guardian for an alleged incompetent person is brought into this court by writ of certiorari, and with it the record in the proceeding to appoint a general guardian in the same matter. It appears by the return that the court had, after an extended hearing, made an order appointing a general guardian for the property and person of plaintiff in certiorari and that she had appealed therefrom to the circuit court. Notice of and reasons for appeal had been filed, the bond on appeal filed and approved, and an order made directing the manner in which notice of the appeal should be given, after which and on the same day and before the appeal had been perfected August Wagner, who is brother-in-law of plaintiff in certiorari, who in his petition described himself as friend and is the same person who petitioned for the appointment of a general guardian, applied for the appointment of a special guardian. He set out the fact of the adjudication of incompetency, the appointment and qualification of the Union Trust Company as guardian, the appeal and the fact that Christine Wagner was possessed of an estate, real and personal, valued at upwards of $15,000, besides a life estate in realty valued at $50,000 and upwards, and alleged that it was necessary in order to protect her property, collect the rents and care for her, that a special guardian be appointed pending the determination of said appeal. Reference is also made to the petition for the appointment of a general guardian and to the proceed-

ings had thereon. The statute provision is (3 Comp. Laws § 8710) that if after a full hearing and examination it shall appear to the judge of probate that the person in question is incapable of taking care of himself and managing his property, he shall appoint a guardian of his person and estate; and, upon a proper showing and upon such notice as he shall direct, pending any application for the appointment of a general guardian as aforesaid, or pending any appeal or litigation in relation to the appointment of such general guardian, may, if he shall deem it fit and proper, under the circumstances of the case, appoint a special guardian of such person. The statute does not contemplate that where the issue of incompetency has been determined there shall necessarily be a new hearing and determination of that issue upon the application for a special guardian. Assuming the regularity of the proceedings to appoint a general guardian and an interference by appeal or otherwise with the performance by the guardian of his duties, the question of appointing a special guardian is addressed to the sound discretion of the court and is determined by the apparent condition of the ward, or of his estate, or both. It is an auxiliary proceeding (*In re Bassett*, 68 Mich. 348), and it is apparent that "a proper showing," within the meaning of the statute, may be made by the proofs produced at the hearing upon the original application. We are of opinion that the objection that the application for, and the appointment of, the special guardian were premature because the appeal from the order appointing a general guardian had not been perfected, and the objection that the court had no jurisdiction to appoint a special guardian because formal application therefor was made by a person neither a relative nor friend within the meaning of the statute, should be overruled; the latter on the ground that jurisdiction did not depend upon the particular relationship to the alleged incompetent of the person suggesting or applying for the appointment of the special guardian. As to the sufficiency of the service of the notice required

to be given, we must assume from the return that service was made in the manner and time directed.

It is urged, however, and this is the meritorious question presented, that the court acquired no jurisdiction to appoint a general guardian and, for that reason, no jurisdiction to appoint a special guardian. *In re Bassett*, supra. The ground of this objection is the one already stated, viz., that August Wagner is neither a relative nor friend of the alleged incompetent within the meaning of the statute.[1] It appears from his petition that there are a number of relatives by consanguinity, some of them residing in the city of Detroit, and no reason is given, in the petition, for interference in the matter by the brother-in-law. By her attorneys, the alleged incompetent objected that petitioner was not such a relative or friend as the statute contemplates. There is no finding or determination of the probate judge upon the matter beyond this, that in appointing a general guardian he necessarily overruled the objection.

From the year 1818 until now the words "friends or relations" appear, in the same connection, in the statute law of the Territory and the State. The act "empowering the judges of probate to appoint guardians to minors and others," made a part of the Territorial law by the governor and judges, July 27, 1818 (1 Terr. Laws, p. 375), is adopted from the laws of Massachusetts. In common parlance, a friend is "one who entertains regard for another and takes active interest in his welfare." Is this the statute meaning of the word, and, if it is, is jurisdiction conferred upon the court by the bare allegation, in the petition, that petitioner is a friend of the alleged insane or incompetent person? We are referred by counsel to no interpretation of the word in a similar connection. The Massachusetts courts have not, so far as our examination has extended, discussed or determined the point here presented. The supreme court of Wisconsin, consid-

---

[1] Section 8709, 3 Comp. Laws.—REPORTER.

ering a similar statute, expressed the opinion, although not called upon to decide the question, that a case might arise—

"Where the court would be justified in proceeding upon the application of a person having no more friendly relations to the incompetent person than the petitioner in this case [petitioner described himself as a neighbor and life-long friend and alleged that the incompetent had no wife or children in the county]; but where it appears that there are near relatives or others occupying the position of a 'friend,' having intimate associations with the party proceeded against, such relatives or friends ought to be the petitioners, unless some cause be shown why they neglect or refuse to proceed; * * * unless it appears from the petition that there is some good reason why the application is not made by such relatives." *Appeal of Royston*, 53 Wis. 612.

It is a general rule that no court can allow any one to intervene in the affairs of an estate unless personally interested or authorized by law so to do. *Breen* v. *Pangborn*, 51 Mich. 29; *Taff* v. *Hosmer*, 14 Mich. 249. In the latter case it was held, however, that a near relative (grandfather of the minor), who could not have appealed from the probate of the will if nothing but property was involved, could appeal if the will appointed guardians to the minor. See *Goss* v. *Stone*, 63 Mich. 319, 321. The point considered was what persons other than the father, mother and infant, who are named in the statute, were authorized to intervene in proceedings to appoint a testamentary guardian for an infant, and the right of others to intervene and to have notice of such proceedings was found in the jurisdiction of courts of chancery over the persons and estates of infants and the practice, in those courts, of referring matters of that nature to a commissioner to report the circumstances of the infant, what relations he had, and admitting all proper parties to propose a guardian. Under this practice, the term "relations," it is said, included those who would, if the infant died intestate, be entitled to a distributive share of his estate.

It is at least doubtful if, as to lunatics and incompetents, the same jurisdiction is admitted. But it may be reasonably said that the legislature intended in the use of the term "relations or friends," not merely to employ two different words with equivalent legal meaning, but to designate a class of persons, other than relatives, who might institute guardianship proceedings in the case of alleged insane and incompetent persons. We feel obliged to hold that the word "friends" means, in this statute, something different from the word "relations." It may seem that it will be intolerable if any busybody, however kindly disposed, may, upon the mere allegation of friendship, set in motion an inquisition of this nature, calling upon the respondent to defend himself, at more or less expense, from the charge of mental incompetency. It is equally intolerable if, in a particular case, friends may not be heard, even in opposition to relations, to assert, in such proceedings, the insanity or the mental incompetency of a person. It is to be kept in mind that this statute contemplates the existence of insanity or of mental infirmity equivalent thereto in destroying mental competency. *In re Brown,* 45 Mich. 326; *In re Storick,* 64 Mich. 685. It is also to be observed that such an incompetent is, in fact, incapable of dealing with his property, and that various contract and other relations may be involved in his actions with reference thereto. In short, there is a sound public policy served in requiring that incompetent owners of property shall be represented in all dealings with reference thereto by a duly qualified and responsible agent. This in addition to considerations of proper care of the incompetent. And a case may be imagined where relations were in conspiracy to secure to themselves the property of the incompetent. These considerations support the conclusion that the words relations and friends are employed in this statute with their popular meanings. Counsel seem to be agreed that the word relations has a more limited meaning. This upon the supposed authority of *Taff* v. *Hosmer,* supra, a case in

which, as we have seen, this statute was not considered and in which the conclusion arrived at is stated in the following language:

"We are entirely satisfied that the next of kin may, if they see fit, make themselves parties to guardianship proceedings, and that when they do so, they may appeal from an adverse decision."

The cases in which it is held that a power to appoint amongst "relations and friends" is to be considered as a power to appoint relatives only; that a reversion of realty to "my friends" means to the testator's kindred; that a statute which permits administration of an estate to be committed to "the next and most faithful friends" should be interpreted so as to limit appointment to blood relatives, rest upon reasoning and upon conditions not here present or applicable. We find in the language employed in the statute nothing to indicate that the legislature intended to prefer relatives to friends, or to limit either class of persons by a particular relationship or intimacy with the alleged incompetent. It seems insensible to find limitations of the meaning of the word relations and give to the word friends its generally accepted meaning. The essential inquiry in every case is whether the person alleged to be insane or incompetent is so in fact. Upon this subject, it is apparent, a friendly neighbor may be better informed than a relative living at a distance. If it is a fact, the incompetent ought not to continue to manage himself or his property. Notice of proceedings to ascertain the fact must be given to the incompetent and to those interested in his estate, and, presumptively, in his welfare. *In re Bassett*, supra; *In re Myers*, 73 Mich. 401. See, also, *Storms* v. *Allegan Circuit Judge*, 99 Mich. 144; *Munger* v. *Kalamazoo Probate Judge*, 86 Mich. 363. Courts will look with disfavor upon, and legal remedies can be found for, mere intermeddling in such cases.

We are of opinion that the petition for appointment of

a general guardian is sufficient to confer jurisdiction upon the probate court and that the order and determination of that court in appointing the special guardian should not be disturbed.

BLAIR, MONTGOMERY, HOOKER, and MOORE, JJ., concurred.