## NED et al. v. ROBINSON.

No. 27559.    Sept. 14, 1937.

Rehearing Denied Jan. 11, 1938.

A. A. Kelley and Harold Mullen, for plaintiffs in error.

Robert Crockett, U. S. Probate Attorney, and Don Welch, for defendant in error.

PHELPS, J. In 1931 the county court appointed a guardian for Frank Ned, an adult Choctaw Indian, on the ground of mental incompetency because of habitual drunkenness. Upon the same day Frank Ned made a certain conveyance of real estate the title to which became vested in one of the plaintiffs in error. The conveyance was not attempted to be made pursuant to the guardianship proceedings, however, but was by the ward individually, as if no guardian had been appointed. Subsequently a suit was filed by the United States in the federal court, on behalf of said Indian, and against the principal plaintiff in error and others, which resulted in the cancellation of the deed. The plaintiff in error then filed a motion in the same county court in which the guardian had been appointed, and in the same case, asking that the judgment declaring Ned incompetent and making the appointment be vacated. This was in 1936. The ground alleged by the motion was lack of jurisdiction, and the movant further alleged that if the judgment be vacated, he could then reverse the federal court judgment, by bill of review. Both the county court and the district court on appeal dismissed the motion for the reason that it did not state facts entitling the movants to the relief prayed for, and now they appeal to this court. The Indian was also named as one of the movants, "in his own proper person, and by E. C. Powell, his next friend," and he is named as a plaintiff in error, which is a novel situation, for if the Indian wins the lawsuit, he loses his land.

It is not contended that the ward was competent when the guardian was appointed. Neither is it contended that he is now competent. and if he in fact had any hand in filing this motion "in his own proper person," the wisdom of foregoing any such contention is apparent. There is no charge

of mismanagement or delinquency by the guardian, who is named defendant in error in this appeal. The fact is that the ward is named as a movant and plaintiff in error in a theoretical sense only, and that the motion 'and appeal are really prosecuted by the purchaser of the land, whose title was held defective by the federal court which restored the property to the ward, canceling the deed.

The first proposition advanced as reason for reversal is th'at the person who filed the petition for the adjudication of incompetency and for appointment of guardian was neither a relative nor friend of Frank Ned, and that therefore the court was without jurisdiction to proceed in the matter. The petition was filed by the defendant in error, who was later appointed guardian. Section 1445, O. S. 1931, 58 Okla. St. Ann., sec. 851, provides in part that the petition for adjudication of mental incompetency must be filed by a relative or friend. It is conceded that he is not a rel'ative. The petition for appointment alleged that he was a friend. The motion to vacate alleged that he was not in fact a friend.

We must assume th'at by competent evidence it was found in the original proceeding that he was a friend. Section 1082, O. S. 1931; Greer v. McNeal, 11 Okla. 519, 69 P. 891. May that question of fact now be relitigated, in a subsequent motion to vacate the judgment, in the 'absence of fraud or other statutory ground? It is very doubtful, yet we do not need to base our decision upon a negative answer to that question.

Where, as in the instant case, there is no question but that the ward was in fact incompetent when the appointment was made, and has so remained, should we declare the wh'ole proceedings null and void, and thereby reach back and nullify every act of the guardian during the intervening five years, thus dam'aging those numerous innocent persons who may have dealt with him, merely because he was not such a close **personal** friend to the ward as the plaintiffs in error would construe the law to demand? The law does not require any such dr'astic result, for it does not require intimate friendship to exist in the petitioner. Although the statutes governing inquisitions of incompetency are usually followed strictly, it is true after all that that with which the courts are mainly concerned is not who institutes the proceeding, but whether it is for the best interest of the individual and of the people among whom

he lives. 14 R. C. L. 557; State v. Guinotte, 257 Mo. 1, 165 S. W. 718, Ann. Cas. 1915D, 658, 51 L. R. A. (N. S.) 1191 'and note; Gerke v. Colonial Trust Co., 117 Md. 579, 83 A. 1092. A mere stranger, or a mere busybody, as some of the cases express it, may not institute the proceeding, but nevertheless we find from the cases that as a usual thing any person having the interest of the alleged incompetent in mind may qu'alify sufficiently to institute the proceeding under statutes permitting same to be filed by a "friend." Under such statutes, and also those permitting the beginning of actions in behalf of minors and others by a "next friend," the word is not given the meaning accorded it in common parlance. The latter term was defined in Guild v. Cranston, 62 Mass. (8 Cush.) 506, as "any person who will undertake the infant's cause," and in Zazove v. M., St. P. & S. S. M. Ry. Co., 218 Ill. App. 534, as "one who, without being regularly appointed guardian, acts for the benefit of" the minor or incompetent. The word "friend," as used in statutes prescribing the institution of proceedings to determine incompetency, and in other probate proceedings, has been discussed in several cases which we have discovered. The following is from Clark v. Campbell, 82 N. H. 281, 133 A. 166, 170, 45 A. L. R. 1433:

"The word 'friend,' unlike 'relations,' has no accepted statutory or other controlling limitations, and in fact h'as no precise sense at all. Friendship is a word of broad and varied application. It is commonly used to describe the undefinable relationships which exist, not only between those connected by ties of kinship or marriage, but 'as well between strangers in blood, and which vary in degree from the greatest intimacy to an acquaintance more or less casual. 'Friend' is sometimes used in contradistinction to 'enemy'."

In People v. Bond, 93 N. Y. S. 277, 104 App. Div. 47, "friend" was described 'as one favorably disposed. For the purpose of such a statute it was held in Davis v. Merrill, 47 N. H. 208, that a man's wife may properly be regarded as his friend. In the case of In re Wagner, 151 Mich. 74, 114 N. W. 868, the court stated that no particular degree of intimacy was required in order that the person starting the action be considered the "friend" of the alleged incompetent person. For all practical purposes he is in about the same status as a guardian ad litem. The friendship is that which bespeaks itself from the nature of the undertaking, and a case is possible where there may even be cool feeling be-

tween the two and yet the filing of the application or petition would in fact be an act of friendship from the practical viewpoint. There being no charge of mismanagement, and it being conceded that the ward was and is incompetent, and that the guardian has recovered valuable property for the ward, it is apparent that the defendant in error has acted in the best interest of his ward. By judicial finding he was adjudged a friend within the meaning of the statute, and the history of the case has proved the soundness thereof. We are not inclined to permit impeachment of such status at this late date, to the detriment of those innocent third parties who have relied thereon, by the contention, even if proved, that he was not in fact a warm, close, personal friend of the incompetent person. And candor demands that we do not overlook still another significant fact: this drink-ridden and incompetent Indian, for whom the plaintiffs in error express much sympathy, and whose rights they are so anxious to safeguard, sold the grantor of one of their number a sizeable amount of oil-producing land for the sum of $140. The federal court properly canceled the deed and now the other plaintiff in error, who would retake the land from the Indian, is only in this court because of his designation as "next friend" of the Indian, yet he complains of practically the same term being applied to his opponent, who has really benefited the Indian.

The second proposition advanced for reversal is that the county court was without jurisdiction in the original proceeding to render a judgment as to the incompetency of Frank Ned, in the absence of a jury verdict to that effect; in other words, that such verdict was necessary, regardless of whether a jury was requested. The record does not reflect whether a jury was demanded. Section 1446, O. S. 1931, treating of any person having a legal guardian, "and who is about to arrive at legal age," against whom such a petition has been filed, provides that such person shall have the right to have the question of competency determined by a jury. Obviously that section refers only to minors who have guardians, and not to adults, yet even as to minors we said, in Johnston v. Guy, 165 Okla. 156, 159, 25 P. (2d) 625, 627, that the section "merely confers upon an alleged incompetent the right or privilege to have the issue determined by a jury, and that such section does not make a jury trial mandatory." The only section dealing with the hearing in such case as this is section

1447, O. S. 1931. (It should be noted that we are not dealing with the insanity statutes.) That section reads:

"If after a full hearing and examination upon such petition, it appears to the judge of the county court that the person in question is incapable of taking care of himself and managing his property, he must appoint a guardian of his person and estate, with the powers and duties in this article (chapter) specified."

We therefore see that nothing contained in the section requires or even contemplates a jury trial in a proceeding determining simple incompetency. But the plaintiffs in error say that section 19, article 2, of the Oklahoma Constitution, making inviolate the right of trial by jury, necessitated a jury trial anyway, in view of the fact that the common law in force in Oklahoma prior to statehood necessitated jury trial in such a hearing. That such was the law in force here upon the adoption of the Constitution, we cannot agree. We held to the contrary, even in insanity cases, in Ex parte Dagley, 35 Okla. 180, 128 P. 699, wherein it was stated in the fourth syllabus:

"The law in force in the territory of Oklahoma at the time of the admission of the state did not give persons, charged with being insane for the purpose of being committed to an insane hospital or asylum of the state, a right of trial by jury on the issue as to insanity."

It thus appears that the Constitution does not make a jury trial necessary. It should be noted, however, that since the filing of the above opinion in 1912, the Legislature has provided for jury trials, if requested, in insanity proceedings. Section 5005, O. S. 1931, enacted in 1917. It should further be noted that prior to statehood the law in force in the territory of Oklahoma did give insane persons the right of trial by jury on the issue of commitment to an asylum, to be conducted substantially and in all respects as under an inquisition of lunacy, but this was only upon an appeal to the district court from the county court, if such appeal was taken by certain persons named in the statute. St. 1890, sec. 3965; St. 1903, sec. 3831; Comp. Laws of Okla. 1909, sec. 4955; R. L. 1910, sec. 4554; C. O. S. 1921, sec. 8255; O. S. 1931, sec. 5045. Of course the modes of procedure as to insanity and incompetency are different, and should not be confused. In re Carney's Guardianship, 110 Okla. 165, 237 P. 111. But even under the stricter safeguards accorded persons accused of insanity they were not entitled to jury trials on

the issue of insanity as a matter of right under the law in force in this state prior to adoption of the Constitution (Ex parte Dagley, supra), and we conclude that neither were persons charged with incompetency, and that therefore the constitutional provision relating to the right of trial by jury does not make it mandatory that a judgment of incompetency be based upon a jury's verdict to that effect.

Under the third, fourth, and fifth propositions submitted by the plaintiffs in error, all of which may be considered together, they point out (a) that no guardian ad litem was appointed to represent Frank Ned at the hearing on his incompetency, (b) that no citation or notice was served upon the next of kin of Frank Ned; and (c) that he had such next of kin who should have been appointed his guardian or an order should have been issued finding the next of kin disqualified. The statutes applicable do not require any of these things. Some or all of them are required by statutes which specifically refer to guardianships of minors, or persons alleged to be insane (sections 1419, 1504, 1505, 5005, O. S. 1931), but a careful inspection of all such sections reveals that they do not relate to this kind of action. Chapter 9, article 4, of the 1931 Statutes, being sections 1445 to 1449, inclusive, is applicable here, and nowhere therein are these requirements to be found. Such is admitted in one of the briefs of plaintiffs in error, wherein the following announcement is made:

"Comparable to some other states, it must be frankly admitted that our Oklahoma Code relating to the subject of unsoundness of mind and the appointment of guardian by reason thereof, is not as complete as we should like to have it. Hence, there arises from the necessities of this situation, the duty of interpolating and reading into our Oklahoma statute, by implication, provisions to supply such omissions."

We feel that if we should attempt to read into the statutes those things for which the plaintiffs in error argue in this case, we would be stretching the limits of permissible implication entirely too far. Let us consider, for illustration, the contention that the failure to appoint the next of kin of Frank Ned, as guardian, voids the proceedings. Not even in the case of a minor must the guardian necessarily be a relative. There can be no question that sections 1504 and 1505, O. S. 1931 (30 Okla. St. Ann., sections 11 and 12), refer to minors only. Section 1504 provides that the first consideration in determining the question is "by what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare; and if the child be of sufficient age to form an intelligent preference, the court or judge may consider that preference in determining the question." By the second subdivision of the section it is then provided that as between parents adversely claiming the guardianship neither parent is entitled to it as of right, but, other things being equal, a child of tender years should be given the mother, and one of an age to require education and preparation for business or labor should be given the father. In section 1505 the Legislature went into considerable detail in providing four separate considerations by which the question of custody and guardianship of a minor should be determined, as between two persons who are equally entitled to the custody in other respects. How may we "imply," from this, that the Legislature intended to include adult incompetents, and that a proceeding wherein any but a relative of such incompetent is appointed guardian is wholly void? We cannot agree with any such contention. We do think, however, that in the matter of appointing a guardian ad litem of a person accused of incompetency, as above stated, it would have been far wiser for the Legislature to provide for some form of protection, which has been done in several states, but in the absence of such provision we are without power to create it, under color of the doctrine of implication, for there is no statutory provision or wording upon which to base such implication. As suggested, we are tremendously impressed by the 266 pages of argument submitted by the plaintiffs in error as to the need for such provision, but that power cannot rightly be assumed by this branch of the government,

The final contention is in substance that it was error to dismiss the motion to vacate, in view of the allegation therein that the person who was appointed guardian was already guardian of as many as five persons other than relatives when he was appointed. Section 1421, O. S. 1931, provides that no person shall be appointed guardian who is guardian of as many as five persons, other than his own family or relatives. (Trust companies exempted,— S. L. 1925, ch. 56, sec. 3, 4th par.; section 9207, subd. 4, O. S. 1931,—except foreign trust companies, S. L. 1927, ch. 39, section 1; section 1424, O. S. 1931.) Assuming that movants could prove such allegation, clearly then the person appointed as guardian

was ineligible for the office. Had such evidence appeared at the original proceeding, he could not legally have been appointed. Had the question been raised in an appeal from such proceeding, the appointment of that particular person could not have been affirmed. Probably even now he is subject to removal. But that is a question which goes to the identity of the guardian, or, to put it differently, the question of who shall be appointed guardian,—not the question of incompetency, which was and still is the question with which the court is mainly concerned.

There is no reason why the rules pertaining to de facto officers generally should not apply. We must presume that the evidence before the court at the hearing resulting in the original appointment did not disclose the situation now alleged, and certainly under these circumstances the appointment was good until, and unless, someone should raise the question. He should be removed if he is not eligible, but it does not follow that we should now reach back, when the question is raised for the first time, and void the entire guardianship proceedings. Rights of innocent third parties have no doubt intervened.

The judgment is affirmed.

BAYLESS, V. C. J., and WELCH, CORN, GIBSON, and HURST, JJ., concur. OSBORN, C. J., concurs in result. RILEY, J., absent. DAVISON, J., not participating.