## H. R. MAST V. OCIE ORUM.

No. 7388. Decided October 18, 1939.
Rehearing overruled November 22, 1939.
(132 S. W., 2d Series, 105.)

*Adams & McAlister*, of Nacogdoches, for plaintiff in error.

*John B. Guinn*, of Jacksonville, for defendant in error.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This suit was instituted in the District Court of Nacogdoches County May 25, 1936, by H. R. Mast as plaintiff, and he will be so designated here. It was against Ocie Orum, Jr., who will be referred to as defendant. The suit was in the nature of trespass to try title for the recovery of title and possession of a sixth-tenth interest in 160 acres of land.

It is admitted that Jessie Runnells is common source of title, and plaintiff is entitled to recover unless a guardian's deed under which defendant claims is upheld. Judgment in the district court was against plaintiff and this judgment was affirmed by the Court of Civil Appeals. 111 S. W. (2d) 1129.

The facts with reference to the guardian's deed are as follows:

On August 11, 1919, B. S. Shirley filed application in the probate court of Nacogdoches County to be appointed guardian of the estate of Jessie Runnells. Among other things the petition contained the following recitals:

"Comes now your petitioner B. S. Shirley and represents to the Court that he is a bona fide resident of Nacogdoches County, Texas; that Jessie Runnells is an inmate of the Lunatic Asylum at Terrell, Texas, and has been such inmate for a period of something like seven years, the exact date that he was so incarcerated can not be given by your petitioner, because after careful investigation no record can be found in the Probate records of the time of trial and sending the said Jessie Runnells to the asylum for the insane, although such was done, which will be shown to your Honor by competent proof; that a part of those who would become heirs of the said Jessie Runnells at his death have requested your petitioner to act as

Guardian of the estate of said Jessie Runnells and he has agreed to do so, provided it meets with the approbation of the Court for him to so act. Your petitioner states that he is not related to the said Jessie Runnells, nor has he any interest in the estate of the said Jessie Runnells, and that it is only at the request of those who are interested in said estate that he makes this petition; he says also that he is not disqualified from so acting as the Guardian of the estate of said Jessie Runnells, who is of unsound mind, and as such now confined by due process of law in the hospital for the insane at Terrell, Texas."

The application then proceeds to set out that Jessie Runnells was entitled to an estate, real and personal, situated in Nacogdoches County, and a necessity existed for the appointment of a guardian. It was then alleged that said property was being misused and misappropriated, being adversely held by certain persons, and was being subjected to waste; that the rents and revenues therefrom were being appropriated by others, and that certain persons were cutting and disposing of the merchantable timber situated upon the land. Among other things the application contained the following prayer:

"Premises considered your petitioner prays for temporary letters of guardianship of the estate of said Jessie Runnells, a lunatic confined as before stated, that citations issue as the law directs in such matters and that at the next regular term of the County Court of Nacogdoches County, Texas, such guardianship become permanent, or until such time as the said Jessie Runnells may be discharged from the hospital for the insane, and is incapacitated to attend to his own affairs in matters of business."

In response to said application, and on the said 11th day of August, 1919, the county judge entered an order appointing B. S. Shirley guardian, which, in part, was as follows:

"On this 11th day of August, 1919, this cause coming on to be heard on the petition of B. S. Shirley to be appointed Guardian Temporary of the estate of Jessie Runnells lunatic, and it appearing to the Court that is is necessary for the protection and safeguarding of the estate of said Jessie Runnells, and it further appearing that B. S. Shirley is a proper person to be appointed temporary guardian of said estate and is not disqualified in so acting, it is therefore ordered, adjudged and decreed by the Court that B. S. Shirley be and he is hereby appointed temporary guardian of the estate of Jesse Runnells,

lunatic. It is further ordered that citation issue as the law directs in such matters and if no contest is filed this temporary guardianship will be made permanent at the next regular term of this Court, as prayed for in the original petition of B. S. Shirley, this day filed in this cause."

The order contains further directions that the guardian take immediate steps to stop depredations, timber cutting, and other acts of waste.

On the same day B. S. Shirley executed bond and took oath of office as temporary guardian. In due time notice was given in accordance with law and on November 21, 1919, at a regular term of the probate court the following order was entered:

"On this 21st day of November, 1919, at the regular November Term 1919 of the County Court of Nacogdoches County, Texas, this cause coming on to be heard in its regular order upon the call of the docket, and that part of the Temporary Guardian petition praying for such guardianship to become permanent, being again presented to the Court praying that B. S. Shirley be made permanent guardian of the estate of said lunatic, and the same being considered by the Court, and it further appearing to the Court that citation has issued, been posted and published as the law directs in such matters, and it further appearing to the Court that no contest has been filed contesting the making of said guardianship permanent, and the Court being of the opinion that such guardianship should be made permanent, and that the acts and things done by the temporary guardian in taking charge of said estate, and upon application duly filed has sold the major part of said estate and under oath of this Court has such sale confirmed and passed the title thereto.

"It is therefore ordered, adjudged and decreed by the Court that said temporary guardianship be and the same is in all things made permanent and B. S. Shirley is hereby constituted and appointed permanent guardian of the estate of Jessie Runnells, a lunatic, until such time if ever as the said Jessie Runnells may be cured and discharged from the lunatic asylum and is capable of handling his own affairs in pecuniary matters, at which time said guardian may make settlement and be discharged as the law directs in such matters.

"It is also ordered, adjudged and decreed by the Court that all things heretofore done in vacation under order of this Court by the temporary guardian in the matter of taking charge of, handling and selling the major part of said estate be and the same is in all things confirmed."

During the interim between the entry of the original order of August 11, 1919, and the entry of the order last above mentioned, B. S. Shirley, as guardian, made application to the court for an order to sell the interest of Jessie Runnells in the land in controversy, and the court granted order of sale. In pursuance of said order Shirley, as guardian, made sale of said real estate, reported such sale to the court, and on October 28, 1919, the court entered order confirming the sale. The sale was made to R. E. Banks for a consideration of $3200.00, which consideration was fully paid. It is undisputed that all the steps in this proceeding were regular, assuming the authority of the court to order said sale. From Banks the title to the land in question passed to defendant Orum, and he had been in possession of same and using it as a home some four years prior to the filing of this suit.

■ It will be observed that the sale of this land was made by the guardian while acting in the purported capacity of temporary guardian, and prior to entry of the order making his appointment permanent. The application for writ of error contains six assignments, and they each and all, in substance, submit the sole proposition that there is no statutory authority for the appointment of a temporary guardian for a person of unsound mind; and as Shirley purported to act as temporary guardian, the orders of the court authorizing the sale and confirming the sale, as well as the guardian's deed, were wholly void. It seems to be conceded that this was a collateral attack upon the orders of the court, and the guardian's deed, as it undoubtedly was. Carroll v. McLeod, 133 Texas 571, 130 S. W. (2d) 277, and authorities cited.

■ The case as it stands here presents the sole question of whether or not the court was without statutory authority or power to appoint a temporary guardian. We have concluded that the court had power and jurisdiction to appoint a guardian in the manner as was done, and that the action of the court in making sale of the property through such guardian was not void, and was not subject to collateral attack.

Chapter 12 of Title 69 of the Revised Statutes of 1925 deals particularly with "Lunatics and Drunkards." By Article 4267 it is provided that "upon information that any person of the county is of unsound mind, or is an habitual drunkard, and is without a guardian, if satisfied there is good cause for the exercise of his jurisdiction, the county judge shall either in term time or in vacation, issue a warrant to the proper officers com-

manding that such person be brought before him at a time and place named in such warrant."

Article 4268 makes it the duty of any county officer who may discover any person to be of unsound mind, and without a guardian, to file information with the county judge, who shall issue proper warrant. Article 4269 sets out requisites of such information. Article 4270 provides for impaneling a jury to try the question of insanity. Article 4271 makes certain provisions for the proceeding. Article 4272 is as follows: "If it be found by the jury that the defendant is of unsound mind or is an habitual drunkard, as charged, the court shall proceed, immediately and *without further notice,* to appoint a guardian of the person and estate of such defendant in the same manner as in the case of a minor."

Article 4274 provides that "each provision of this title relating to the guardianship of the persons and estates of minors shall apply to the guardianship of the persons and estates of persons of unsound mind, and habitual drunkards, in so far as the same are applicable."

In this instance it was alleged that Jessie Runnells had been some years before tried and adjudged to be a lunatic. It was further alleged that he was confined in the lunatic asylum at Terrell, Texas. Certainly it will be presumed that the court found the fact of his prior conviction as a lunatic in accordance with Article 4267 to 4271, inclusive. The fact of the prior adjudication is admitted in the application for writ of error. Manifestly under Article 4272, set out above, the court had the right and power, at the time of the previous adjudication of lunacy, to "immediately and without further notice" appoint a guardian of the estate. While it seems the statute contemplates such action promptly after the trial, yet the court certainly would not lose the power to appoint by delay. In the case of Heckman v. Adams, 50 Ohio St. 305, 34 N. E. 155, by the Supreme Court of Ohio, where the statutes were almost identical with ours, and in a situation very similar to the one here presented, it was said:

"From these and other provisions of the statute it is clear that the probate judge upon an inquest of lunacy obtains jurisdiction of the person of the patient, and that such jurisdiction continues until the patient is finally discharged. The status of the patient as being insane and a fit person for guardianship is fixed by the finding of the probate judge upon the inquest of lunacy, and such status continues until it is changed by the

discharge of the patient; and any time before such discharge the probate judge is authorized by section 6302 to appoint a guardian for such insane person. The statute seems to contemplate the appointment of a guardian immediately upon the status of insanity being fixed, *but delay in the appointment could not have the effect to take away the jurisdiction of the probate court*, so long as the delay is not extended beyond the discharge of the patient. The time of making such appointment of guardian, or whether there is any necessity for an appointment at all or not, is largely in the discretion and sound judgment of the probate court." (Emphasis ours.)

It is the continuing duty of the State, through the probate court, to protect and administer the estate of an unsound person. There may have been many good reasons why the court did not see proper to appoint a guardian at the time of the adjudication of the question of lunacy, but the court did not lose its jurisdiction to do so when the proper time arose, and certainly such necessity existed at the time the court acted. It was then wholly unnecessary for the court to try again the question of insanity, it having been made to appear that the person of unsound mind was still confined in the State asylum. The following cases clearly support the action of the court in making the appointment of Shirley as guardian at the time and in the manner as was done. Swope's Adm'r. v. Frazier's Committee, (Ky.) 37 S. W. 495; Foran v. Healy, 73 Kan. 633, 85 Pac. 751; 86 Pac. 470; Johnson v. Gustafson, 96 Kan. 630, 152 Pac. 621; In re Wagner, 151 Mich. 74, 114 N. W. 868; Heckman v. Adams, supra.

■ Our statute clearly contemplates that after a person has notice by service of a warrant and a trial upon the question of his insanity, no further notice is necessary in the matter of the appointment of a guardian. If found to be of unsound mind, he immediately becomes a ward of the State, and the administration of his estate by the State, through the instrumentality of a guardian, is eminently proper at all times. The State has a claim upon such estate for support of the ward, and is certainly the proper one to protect same from exploitation by others. The statute says nothing about a temporary or a permanent guardian. It is the duty of the court to appoint a guardian when the necessity arises and this necessarily means that from the beginning such guardian shall have all necessary power and authority as the court may see fit to give him in order to protect, conserve and administer the estate, and that he shall continue as guardian so long as the court shall find it

necessary to continue his services for the administration of the estate. We think it wholly immaterial that the application by Shirley asked that he be appointed temporary guardian, and his appointment be made permanent at the next term of court, and that this was the way the matter was handled. It is our conclusion that when the matter was brought to the attention of the court by the application and the judge was satisfied that "there was good cause for the exercise of his jurisdiction," and it appearing that there was no necessity for inquiring into the question of insanity, his act put the statute into operation, and the guardian from the beginning possessed all the qualifications contemplated by the statute, regardless of how he was designated; that is, whether as "temporary" guardian or "permanent guardian." There was of course nothing wrong in the court, at its regular term, confirming the appointment and ratifying all the prior acts of the guardian during the interim. By statute he was constituted "guardian," without any qualifying designation.

As this is a collateral proceeding, and as there was both jurisdiction and power on the part of the court to appoint the guardian as was done, the sale and the order confirming same were not wholly void, and therefore not subject to the attack made on same.

The cases relied upon by plaintiff, when carefully considered, may easily be distinguished from the present one; principally on the ground that those holding that there is no statutory power to appoint temporary guardian are ones in which there had been no prior adjudication of lunacy. Clearly such cases are not in point here.

For the reasons stated herein, the judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court October 18, 1939.

Rehearing overruled November 22, 1939.